JOHN R. BERNARD *vs.* GEO. TORRANCE, Survivor of E. S. BUCHANAN.—*June,* 1833.

T and B were partners carrying on business in *Baltimore,* under the name of the Warren Factory. The business was conducted exclusively by a *general agent* for the partnership, who on the 15th April, wrote to O in New York, as follows : "at 18 cts. four months, you may forward 10,000 lbs. of gum, and if you accept this offer, let me know by return mail that I may regulate my foreign orders." On the 16th, T retired from this partnership. HELD, That the true construction of this offer is, that unless the agent received the notification of its acceptance by return mail, or by some other mode of conveyance equally as speedy, it was not to be considered as a binding offer; that if the offer in this respect was not complied with, T, the retiring partner, was not bound by it, and that this was a fact exclusively for the consideration of the jury.

To constitute the offer of an agent, the contract of his principal, it must have been accepted according to its terms, and whether it was so accepted, is a question of fact for the jury.

Where the proposal of an authorised agent to purchase merchandise is accepted, and substantially complied with, by the vendor, his principal is bound, though between the offer and the acceptance, the principal revokes his authority; and this is so, whether the principal is known to the other party or not.

Principals when discovered are ordinarily liable for the contracts of their agents.

A principal authorising an agent to make an offer cannot withdraw to the prejudice of him to whom the offer is made ; the liability after the offer is made must continue, if it be accepted; for it is the principal's own offer, though made through an agent. The acceptance must be according to the terms of the offer.

After an agent's power has been revoked, he has no authority to enter into new negotiations, and of course cannot then dispense with conditions

attached to proposals previously made by him, so as to bind his principal. Any new stipulation or dispensation with previously offered stipulations, would make the agreement, not the acceptance of the one offered, but a *new* agreement.

Where an agent proposed to purchase 10,000 lbs. of gum, and directed the vendor to forward it to him, the fact that the vendor consigned the gum to his own correspondent, with directions to deliver it upon arrival, or that he shipped more gum than was ordered, which larger quantity was accepted on its arrival by the agent, who gave his note therefor, cannot be considered as making a new contract, as to the 10,000 lbs. between the agent and vendor at the time of its actual delivery, nor as a variation from the design of the original agreement.

A retiring partner may be discharged from the debts of the partnership, by the acceptance by the creditor of new notes of the other partners, as renewals of the notes first given, provided the vendor agreed to discharge him by the acceptance of such new notes ; which is a question for the jury—but where the new notes corresponded entirely with those first given, as where they were all signed by, I as agent, and the creditor was ignorant of any change in the partnership, no agreement to discharge can be inferred.

Where a retiring partner does not give notice of his withdrawal, he remains responsible to those who knew he had been a partner, who are ignorant of his withdrawal, and give credit to those who afterwards carry on business in the partnership name.

Evidence that it was not generally known in the place where a certain partnership was carried on, that T was a partner, is admissible to the jury, where the inquiry is, whether the plaintiff knew that the defendant was a partner in order to make him liable. General evidence that he was known as a partner, is also admissible under such circumstances.

**APPEAL** from *Baltimore County Court.*

This was an action of *Assumpsit,* instituted by the appellant against the appellee, and *E. S. Buchanan* (who died pending the suit) on the 30th of June, 1830. Issue was joined upon the plea of *non-assumpsit,* and errors in pleading on both sides, were waived by agreement.

1. It was proved at the trial, that *George Torrance* and *E. S. Buchanan* carried on a large manufactory near *Baltimore,* through the sole agency of *James A. Buchanan.* The business was conducted under the style and name of the *Warren Factory,* by *James A. Buchanan,* as agent. There was no ostensible change in the manner of conduct-

ing it, from 1827 to September, 1830. The plaintiff was a merchant at *New York.* On the 13th April, 1829, his agent, *G. S. Oldfield,* offered to sell *James A. Buchanan* a quantity of *Senegal* gum at a price which he refused to accept. On the 15th April, *Buchanan* made a proposal by letter to the plaintiff's agent, *Oldfield,* at *New York,* for a quantity of gum, an article used in the manufactory. He wrote to this agent, "at 18 cts. four months, you may forward 10,000 lbs. and if you accept this offer, let me know by return mail, that I may regulate my foreign orders." This letter reached *New York* on the morning of the 17th, on which day at 2 o'clock the mail left *New York* for *Baltimore. Oldfield* did not reply to this letter, but communicated its contents to his principal, the plaintiff, who, on the 18th April, shipped 10,892 lbs. of gum at *New York,* consigned to his agents, *Oldfield, Trull & Co.* at *Baltimore,* with instructions to deliver it to *Buchanan.* On the 20th April, *Buchanan,* at the counting room of the *Warren Factory,* was notified of the shipment, did not dissent to it, and on the 29th April, received the gum, and gave his note, *as agent,* for the 10,892 lbs. at the price mentioned in his letter of the 13th. This note not being paid, was renewed twice, and the last renewal was exhibited by the plaintiff, at the trial, still unpaid.

The defendant, *Torrance,* sold out his interest in the *Warren Factory,* upon the 16th April, to the co-defendant, *E. S. Buchanan* (who is since dead) and others, for $60,000. Notice of his retiring from the Factory, *was published in Baltimore,* on the 11th May, 1829. The defendant *Torrance,* held the legal title to the land upon which the factory was erected, and gave a bond of conveyance for it, on the 20th April, 1829. He had held that title from 20th April, 1824. On the 11th March, 1829, *James A. Buchanan* lodged the proof of his agency with the *President and Directors of the Union Bank,* signed by *Torrance,* and dated 20th September, 1828. *J. A. Buchanan,* as agent of the *Warren Factory,* previous to the 13th April, 1829,

VOL. V.——49

had had dealings with the plaintiff's agent at *New York*, to whom he made the proposal for the purchase of the gum. Neither the plaintiff nor his agents knew that *Torrance* had retired from the *Warren Factory*.

The object of the action was to recover from *Torrance* the price of the gum sold and delivered to *Buchanan*, as agent of the *Warren Factory*.

At the trial, after the preceding evidence had been in substance given, the defendant proposed to prove by several persons, merchants and creditors of the *Warren Factory*, and for many years before and after April, 1829, residents in *Baltimore*, that they did not know that the defendant was at any time interested in said factory, and that they did not believe that it was generally known in the city of *Baltimore* or elsewhere, that the defendant had been concerned therein. To the admission of which proposed evidence, the plaintiff objected, but the court overruled the objection, and permitted the same to go to the jury: the plaintiff excepted.

The defendant, by his counsel, then prayed the court to instruct the jury, upon the whole case.

1. That if the jury believe, from the evidence, that the interest of the defendant in the *Warren Factory*, terminated on the 16th April, 1829, and that from that time he ceased to have any concern as a partner in said factory, and that the same was thereafter carried on, not on his account, but on the sole account of other persons, or of some other person, that then the contract, *as given in evidence by the plaintiff, for the sale of the gum, upon which the present suit is brought, is not binding upon the defendant*, and that then the plaintiff is not entitled to recover in this action; provided the jury also believe, from the evidence, that neither the plaintiff nor his agents, through whom the said contract was made, did know or believe, either when the offer to make said contract was made, or from that time until such contract was consummated, that the defendant was a proprietor of the said *Warren Factory*.

2. That if the jury find from the evidence, that the defendant ceased to have an interest in the *Warren Factory* on the 16th April, 1829, and that thereafter the same was carried on by *James A. Buchanan*, as agent for, and on the sole account, and for the sole benefit of other persons than the defendant; and if the jury also find from the evidence, that neither the plaintiff nor his agents, in making said contract, knew or believed that the defendant was one of the proprietors of said factory; and if they also believe, that the interest of said defendant, as one of the proprietors in said factory, or as concerned therein, was not generally known in the city of *Baltimore* or elsewhere, that then the contract given in evidence by the plaintiff, and upon which the present action is brought, is not binding upon said defendant, and that the plaintiff is therefore not entitled to recover in this action.

3. That if the jury find from the evidence, that the contract given in evidence by the plaintiff, and upon which he seeks to recover in this action, was made by *James A. Buchanan*, as agent of the proprietors of the *Warren Factory*, after the defendant ceased to be one of said proprietors; and if the jury also believe, that neither the said plaintiff nor his agents, in making said contract, ever knew or believed, that the defendant was one, or had been one of said proprietors; and if they also believe, that the defendant, having been one of said proprietors, was not generally known in the city of *Baltimore* or elsewhere, and that said plaintiff did not look, in making said contract, to the responsibility of the defendant, that then said contract is not binding upon said defendant, and that therefore the plaintiff is not entitled to recover in this action.

4. That before the plaintiff is entitled to recover under the prior prayers of the defendant, the jury must believe, that the plaintiff or his agents did, at some time, know that said *Torrance* was a proprietor of said factory. Which instructions the court accordingly gave. The plaintiff excepted.

The plaintiff and defendant having given the evidence stated in the plaintiff's first bill of exceptions, and which it is agreed shall be taken, and deemed as part of this exception, and the court having given the opinions stated in the plaintiff's first and second exceptions, the plaintiff, by his counsel, prayed the court to instruct the jury.

1. If the jury should believe, that on and prior to the 15th April, 1829, *Torrance*, the defendant, was one of the proprietors of the *Warren Factory*, and that *James A. Buchanan*, with the knowledge and consent of defendant, was the acting agent of the said factory, in the purchase of materials therefor, and in the management of its concerns generally, and gave the order of that date to *Oldfield*, for the purpose of procuring a supply of gum for said factory, and that in consequence of said order, and said *Oldfield* being the plaintiff's agent, said gum was furnished by the plaintiff, in the ordinary course of business, to *Buchanan*, who was continued as the agent of the *Warren Factory*, from September, 1828 to September, 1830, that then the said defendant is responsible for the price of said gum, if the same has not been in fact paid for; although the jury should believe that *Torrance* retired from said factory, and sold out his interest on the 16th April; and that *Buchanan*, as agent, gave his note for said gum, which was renewed from time to time, as stated in the evidence, if they should also believe that the plaintiff did not agree to discharge *Torrance*.

2. That there is no evidence of any agreement on the part of the plaintiff, to discharge *Torrance*.

3. That upon the whole evidence in this cause, the defendant was not a dormant partner of the *Warren Factory*.

4. That the defendant not being a dormant partner, was bound to give either express or public notice, to exempt himself from liability to the plaintiff, to the extent of ten thousand pounds of gum, if the jury shall believe that it was delivered, as stated in the plaintiff's evidence.

5. That if the jury should believe, that an answer to

*Buchanan's* letter of the 15th April, 1829, apprising him that the plaintiff had accepted his offer to purchase gum, was in fact delivered on the 20th April, 1829, that it was a sufficient answer, and complied with the terms of *Buchanan's* letter of the 15th April, and bound the defendant.

6. That upon the true construction of *Buchanan's* letter of the 15th April, 1829, *Oldfield,* or his principal, the plaintiff, was not confined to communicating the assent to *Buchanan's* proposition, by letter through the mail, but that the real design and true construction of the letter, was to secure to *Buchanan,* the knowledge of that assent, at as early a period as the return mail from *New York,* after the receipt of the letter, would bring it to *Baltimore.*

7. That if the jury should believe that *Oldfield* received *Buchanan's* letter of the 15th April, at *New York,* on the 17th, and that in fact *Oldfield's* principal, the plaintiff, answered that letter by mail of the 18th April, to *Oldfield, Trull & Co.* and mailed it in *New York* on that day, and that said letter reached *Baltimore* on the 20th April, which was in due course for a letter mailed at *New York* on the 18th, and the contents thereof were verbally communicated at the counting room of the *Warren Factory,* in *Baltimore,* by *Bernard's* agents, *Oldfield, Trull & Co.* on the 20th April, 1829, that it is sufficient compliance with *Buchanan's* proposal to purchase the gum, and constitutes a valid contract of the defendant with the plaintiff, to the extent of ten thousand pounds of gum, or to the extent of the gum actually delivered.

8. That if the jury should believe, that all the transactions given in evidence, relate in fact to the proposal contained in *Buchanan's* letter of the 15th April, 1829, to *Oldfield,* of *New York,* and that *Oldfield* was in fact the agent of *Bernard,* and that the gum was delivered to *Buchanan,* as agent for the defendant's previous partner, *E. S. Buchanan;* that then, under the circumstances of this case, the plaintiff is entitled to recover the value of the gum actually delivered, and not in fact paid for.

9. That if the jury believe, that when the plaintiff shipped the gum at *New York,* he was induced to make the said shipment in consequence of the letter of the 15th April, 1829, by *James A. Buchanan,* and had no knowledge that on the 16th April, 1829, *James A. Buchanan's* agency for *Torrance* had ceased; and that neither *Torrance,* the other partner of *E. S. Buchanan,* nor *James A. Buchanan,* informed him or his agents, *Oldfield, Trull & Co.* of the change of the proprietors of the *Warren Factory,* then the plaintiff is entitled to recover the price of the gum actually delivered, or the quantity of 10,000 lbs.

10. If the jury believe, that in fact, no injury was done to *James A. Buchanan,* or the business he was then carrying on as the agent of the *Warren Factory,* by the omission, if any, on the part of the plaintiff to answer the letter of *James A. Buchanan,* of the 15th April, 1829, by return mail, and that in fact, on the 17th April, the day on which the letter of the 15th April was received, the gum was shipped at *New York,* and immediately transmitted and delivered to *Oldfield, Trull & Co.* and that on the 18th day of April, 1829, the plaintiff wrote a letter to *Oldfield, Trull & Co.* which was received in *Baltimore* by them, on the 20th April, and immediately communicated by *Oldfield, Trull & Co.* at the counting house of *James A. Buchanan,* and not dissented from, that then the plaintiff is entitled to recover for 10,000 lbs. of gum, or the quantity actually delivered.

The sixth instruction the court, with the assent of the defendant, gave to the jury, and refused the others. The plaintiff excepted, and the verdict and judgment being against him, he brought the record by appeal to this court.

The cause came on to be argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, ARCHER and DORSEY, J.

*Gill,* for the appellant, contended.

1. That the principal cannot countermand the authority of a *general* agent so suddenly, as to leave parties who

were in treaty with the agent before the countermand, to the hazard of consummating their dealings with the agent personally, when they supposed they were dealing with the agent in his representative character.

2. When a principal, who has had a *general* agent employed, wishes to terminate his responsibility for the agent's acts, he should countermand the authority, give express notice of revocation to those who had previously trusted his agent, and give public notice to affect those who had not dealt with the agent previously. In the latter case, his responsibility necessarily continues for a reasonable period, to be judged of according to the nature of the agent's previous employment, and the circumstances of each case.

3. That *parties who treat with one who had been a general agent, as an agent,* in good faith, ignorant of the revocation of his powers, and so soon after the revocation of his powers, that it could not be known, may hold the principal responsible, and that whether the name of the principal be previously known or not. 1 *Evans Poth.* 42, 43. *Sect.* 79, 80, 81. *Ib.* 267. *Sec.* 447. 2 *Livermore on Agency,* 308, 310, 193, 195. *Chitty on Cont.* 58. *Munn vs. Commission Company,* 15 *Johns. Rep.* 44, 54.

4. That the sale of the gum in this case, being to *Buchanan* as agent, and he really being an agent, the vendor has his remedy, as well against those persons for whom *Buchanan* was actually agent, as those who stand in point of law, in the relation of principal to him.

5. Upon the footing of partner, *Torrance* is responsible.

6. *Torrance* was not a dormant partner. *Mitchell vs. Dall,* 2 *Harr. and Gill,* 171. 3 *Esp. Cases,* 248. *Gow. on Part.* 6, 7, 31, 32.

7. A retiring partner is bound to give express notice to previous correspondents; public notice to other persons. Until one act or the other is done, his responsibility for the acts of his partner or his regular agent, in relation to contracts made in the name of the former firm, continues. *Watson on Part.* ch. 7, 280, 284. *Chitty on Con.* 79, 80.

*Gow.* 322, 323. *Le Roy Bayard & Co. vs: Johnson,* 2 *Peters' S. C. R.* 186, 199. *Ketcham & Black vs. Clark,* 6 *Johns. Rep.* 144, 147.

8. The design of these principles is,.to protect innocent men against fraud, and their application does not depend upon the creditor's knowledge or belief of a right to proceed against a principal of whose withdrawal he is ignorant, but upon the policy of the law, which places the restrictions contended for, upon the conduct of traders, as the surest means of promoting good faith and frank dealing, and of forcing those who take the chance of gain, to run the hazard of loss.

9. Applying these principles *to* the situation and established relations of *Torrance* to the *Warren Factory* and its agent, and to the time and circumstances under which the gum was sold and delivered, it is contended that the judgment of the county court should be reversed.

10. That neither the knowledge and belief of the other creditors of the *Warren Factory,* nor their belief of the general reputation of who were, or were not, the proprietors of that factory, is competent evidence against the plaintiff, and that the court erred in receiving such proof.

He further contended, that the original contract was not extinguished by the note given by the agent, nor by its renewal. *Gow.* 200, 201, 202, 331. *Glenn vs. Smith,* 2 *Gill and Johns.* 508. *Smith vs. Rogers,* 17 *Johns. Rep.* 340.

*Johnson* for the appellee.

1. There was no contract with the plaintiff, until after the 16th April, 1829, when *Torrance* ceased to be a partner, or to have any interest in the establishment. *Buchanan's* letter of the 15th April, containing the terms upon which he was disposed to purchase the property, required an answer by the *return mail,* and a compliance with that requisition, he contended, was indispensable to fix the reponsibility of the defendant, if under other circumstances

after *Torrance* had retired from the concern, and instead of being sent direct to *Buchanan*, as should have been done, they were consigned to *Trull & Co.* the agents of the plaintiff. Besides, the quantity sent, exceeded the quantity ordered, by 892 lbs.; the acceptance therefore of the whole amount by *Buchanan*, constituted a new contract, which was in its nature, entire and indivisible, binding on the parties who were at the time interested in the establishment, but not on the defendant, who had previously parted with his interest. If the defendant is bound by the contract of the 20th, he would be equally bound, no matter how much more might have been sent, than the quantity ordered; and no matter how the terms of the proposition of the 15th might have been changed. If the proposition, with respect to quantity could be altered, and the responsibility of the defendant retained, it might be altered in every other particular, and still he would be liable.

2. The defendant was a dormant partner until 1829, and consequently, whether actual or constructive notice was given, he is not bound, *Ex parte Hodgkinson*, 19 *Ves.* 295. *Evans vs. Drummond*, 4 *Esp. Rep.* 89. *Newmarch vs. Clay*, et al. 14 *East.* 239. 3 *Stark. Ev.* 1080. *Carter vs. Whalley*, et al. 20 *Serg. and Low*, 333. If prior to the 16th April, 1829, *Torrance* was not known as a partner in the factory, either to the plaintiff or his agent, then upon the authority of the case in 20 *Serg. and Low.* 333, he was not entitled to notice, either actual or constructive. The liability of a dormant partner depends upon the *fact* of his being a partner, when the contract is made, and not upon any credit given him, because, as he is not *known* to be a partner, the credit cannot have been given to him. *Gow.* 333. *Mitchell vs. Dall*, 2 *Harr. and Gill*, 171.

3. The defendant was not bound by the acts of *Buchanan*, considered as his agent. The agency had in fact ceased, and as he was not known to be *Buchanan's* principal, the plaintiff could not have been deceived. After parting with

his interest, *Buchanan* was not his agent, and could not bind him, *Leroy Bayard & Co. vs. Johnson*, 2 *Peters' S. C. R.* 179. 2 *Livermore*, 310. 1 *Evans' Poth.* 268, 269. *Watson on Part.* 280. The evidence offered in the first exception to prove that defendant was not known to be a partner, was competent. The plaintiff might have adduced such evidence to show that he was so known, and it would seem to follow, that the reverse might be proved by the defendant. *Carter vs. Whalley, et al.* 20 *Serg. and Low.* 333.

ARCHER, J. delivered the opinion of the court.

The offer to purchase the *Gum Senegal,* for the value of which this suit was brought, was made by *James A. Buchanan,* agent for the *Warren Factory,* on the 15th April, 1829, at a period of time when *George Torrance,* the defendant, was a partner of *E. S. Buchanan,* and joint owner with her of the *Warren Factory.* The defendant and *E. S. Buchanan* were unknown to the public as the proprietors of the *Warren Factory,* but its business was transacted by *J. A. Buchanan,* as the agent. On the 16th April, 1829, the defendant contracted to sell to *E. S. Buchanan* his interest in the establishment, and ceased from that day to have any interest in the conduct and management of the concern, and it was in fact at no time afterwards conducted on his account. On the 13th April, 1829, *G. S. Oldfield,* who was the agent of the plaintiff, residing in *New York,* offered to the agent of the *Warren Factory* to sell the *Gum Senegal* in question, at a price, which by letter of the 15th April, the agent, *James A. Buchanan* refused to accept, and he in his turn made the offer above adverted to, by which he proposed to take 10,000 lbs. at 18 cts. 4 months credit, and in the offer, requested it to be forwarded if accepted, and desired to be notified of the acceptance "by the return mail, that he might regulate his foreign orders." This letter was received by *G. S. Oldfield* in *New York,* and handed over by him to his principal, the plaintiff, who immediately shipped 10,892 lbs. of gum to *Oldfield, Trull*

*& Co.* on the 18th April, and on the same day forwarded to them a letter apprising them of the sale to *Buchanan,* and requesting them to deliver it, and take his note for the same at 4 months. This letter was duly received by *Oldfield, Trull & Co.* on the 20th April, 1829, and on the same day was communicated to *James A. Buchanan,* and on the arrival of the *Gum Senegal* in *Baltimore,* it was delivered by *Oldfield, Trull & Co.* to *James A. Buchanan,* and by him accepted, and his note taken according to instructions, for the amount of the purchase money. This note, which had been discounted at bank, was not paid at maturity, but was taken up with funds derived from the firm of *Oldfield, Bernard & Co.* of *New York,* for *Bernard,* who was then in *Europe;* and a new note was given by *James A. Buchanan* as agent, for the amount, which like the former was unpaid at maturity, and a third note was likewise given, which also was unpaid, and this suit was instituted by the plaintiff to recover the value of the gum. *Torrance* on the 11th May, 1829, had given notice of his retirement from the concern, in the *Gazette,* a paper printed in *Baltimore,* and the plaintiff, who at the commencement of these transactions had resided in *New York,* was absent on the continent of *Europe,* when the first note was taken up, and when the two other notes were given. It also appeared in evidence that the agency of *Buchanan* for the factory, was well known to *G. S. Oldfield,* the agent of the plaintiff in *New York,* through whom this transaction was negotiated.

If the terms of *Buchanan's* letter of the 15th April, were substantially complied with by the plaintiff's acceptance, we conceive that the defendant would be liable to the extent of ten thousand pounds of gum, notwithstanding his withdrawal from the concerns of the factory, on the 16th April, whether he be considered solely in the light of a principal in the transaction, or as a joint owner, or partner with *E. S. Buchanan* in the factory.

In the former case, the agency of *James A. Buchanan, for some principals,* was well known to the agent of the

plaintiff, and that in this tranaction, he was not trading on his own account. He was styled, "the agent for the *Warren Factory*," and dealt as such, and credit was given not to the agent, but to the owners and proprietors of that establishment at that time. It is true, the owners were personally unknown, but credit was imparted to them from the character of the establishment, of which they were proprietors, and when discovered, their responsibility for the contracts of their accredited agent was unquestionable. Principals, when discovered, are ordinarily liable for the contracts of their agents.

If therefore, this contract had been accepted by the plaintiff, at any time anterior to the defendant's withdrawal from the concerns of the establishment, or at any time before the agency of *J. A. Buchanan* had been determined, there could have been no doubt entertained, as to the responsibility of the defendant. But as *Torrance* ceased to have any concern in the factory the day after the offer, and before the contract was consummated, it is supposed, that he could not be made liable. Treating the letter of the plaintiff as an acceptance, the contract with him was certainly not consummated until the 18th April, 1829, for it is the offer on the one side, and acceptance on the other, which constituted the contract. But we apprehend, that under the circumstances which this case presents, it would not be essential to inquire, what was the date of the contract to determine the liabilities of the parties. The material inquiry is, the date of the offer. A principal authorising an agent to make an offer, cannot withdraw to the prejudice of him to whom the offer is made. On the supposition that an acceptance of the offer has been made, a contrary doctrine would work the grossest injustice to the plaintiff. He accepts the offer of one, who is known to be the agent, and ships his goods accordingly, before he could by any possibility know that the principal had put an end to the agency, or withdrawn from the management and concerns of the factory. The contract by which the defendant

had agreed to dispose of his interest, was a secret transaction between him and *E. S. Buchanan*, not known, as far as we are left to infer from the evidence, in *Baltimore*, the neighborhood of the factory, much less in *New York*, the residence of the plaintiff. The liability after the offer is made, must continue, if it be accepted, for it is the principal's own offer, made it is true through his agent, but on that account, not the less his offer.

But to constitute it the contract of the principal, and make the offer obligatory upon the defendant, it must have been accepted, according to the terms of the offer. *James A. Buchanan* could have entered into no *new* negotiations, or stipulation, after the withdrawal of his principal, which could bind the principal; nor could he possess any power after such withdrawal to dispense with any conditions of the offer. Any new stipulation, or dispensation with offered stipulations, would make the agreement not the acceptance of the one offered, but a new agreement; which being made after the defendant's withdrawal, would constitute a new contract, not binding on the defendant, but binding on the principal, of whom *Buchanan* had then become the agent, and it is therefore supposed that such has been the case here, and we are called upon to say, that the contract in question is, in point of law, a new contract not obligatory upon the defendant.

The communications passing between the parties, which together constitute the contract, ought to receive a reasonable interpretation, and should be examined in that spirit of liberality, with which mercantile contracts ought always to be viewed by courts of justice.

With this principle in view, we will proceed to examine the facts relied upon, to show that there was not a consummation of the offer made, but that a new contract was formed.

We shall for the present, waive the inquiry, as to the period when the acceptance was made, and when notified, and the legal consequences growing out of these acts. These we shall examine in the close of this opinion.

It is supposed, that as the gum was not shipped to *J. A. Buchanan* at his risk, but instead thereof, was shipped and consigned to *Oldfield, Trull & Co.* and at the risk of the plaintiff, and that as 10,892 lbs. of gum were forwarded, instead of the quantity for which the offer was made, that these circumstances created a variation in the contract, or rather caused the receipt of the gum by *J. A. Buchanan,* from *Oldfield, Trull & Co.* to form a new contract, and that the existence of such new contract is conclusively evidenced by the acceptance by *Buchanan,* of 10,892 lbs. and giving his note for the entire quantity.   In these views, however, we cannot concur.   The great object of the agent of the factory, was to procure a given quantity of gum, and if this were attained, it could make no possible difference to him, that instead of being forwarded direct to him, it was consigned to another, with directions to deliver it to him. In either case, according to the intention of the parties, the gum was equally forwarded to him.   Nor could the fact, that the gum was transmitted at the risk of the seller, instead of being at the risk of the purchaser, as had been originally proposed, give rise to the idea of a new contract. The plaintiff by shipping at his own risk, merely waived a privilege which he had insisted upon for his own benefit, and accepted the offer stripped of that which would have been a burthen to the purchaser.   He certainly did not, nor could have meant thereby, to have given the purchaser the opportunity and privilege, in consequence of waiving what was a benefit to himself, of refusing the bargain, and repudiating the contract on the arrival of the gum.   And there is just as little reason in saying, that because an additional quantity of gum was transmitted and accepted, that there was therefore a new contract entered into when the gum was delivered to *J. A. Buchanan.*   For any quantity taken by *Buchanan* over and above the 10,000 lbs. there was a new contract, but the letter to *Oldfield, Trull & Co.* declares the quantity sold to be 10,000 lbs., and *Buchanan* was not bound to have taken more, and the 10,000 lbs. is

transmitted with the privilege to *Buchanan* of purchasing at the same price the additional quantity which was sent; and whether the additional quantity was, or was not taken by *Buchanan*, the contract was complete and obligatory, if in every other respect the offer was complied with, and the principal was bound, and for any surplus which was received and purchased, the then owners of the factory were answerable, and not the defendant. Nor do we conceive, that the delivery to *Oldfield, Trull & Co.* of the promissory note, for one entire sum, for the purchase money, and their acceptance thereof, could in any manner change the character of the original contract, and make other persons his debtors than those with whom he had contracted. His contract was made for the gum with the former, not the then proprietors, and to make the note operate the effect of shifting the contract from the defendant to the then proprietors of the factory, it ought to be shown, that the plaintiff knew of the ownership of the factory having been changed, which is not only not shown, but it would appear that this fact was unknown even in the the neighborhood of the establishment.

If indeed, the plaintiff had at any time, agreed to discharge *Torrance* by accepting the responsibility of *James A. Buchanan*, or the proprietors of the factory at the time the second and third notes were renewed, the defendant could not in this case be answerable; but that is exclusively a question for the jury, and whether he did then agree or not, cannot have any bearing on the question, with whom the original contract was made. The acceptance of the first note, certainly furnishes no evidence of such consent to discharge the defendant, because as has just been stated, the plaintiff did not, nor could know, that any change in the ownership had taken place.

If *Torrance* and *E. S. Buchanan* be considered in the light of joint owners or partners, either dormant or otherwise, there exists the same responsibility. They were principals, and although unknown, the credit was given to

them.  It was not given to the agent.  His character of
agent was known.  Nor was it given to the establishment,
but to its owners, in virtue of their establishment, who
when discovered, were answerable as has been before stat-
ed.  The only difficulty which could exist, as to their re-
sponsibility as partners, must be placed on the ground, that
no contract was entered into during the existence of the
partnership.  But we have seen that the vendor had a right
to look to the principal, if the agent made an offer, although
the agency should have been revoked, or the principal
withdrew from the concern before the vendor accepted, and
before he could possibly know of the course to be pursued
by the principal, and if this be the correct doctrine, the re-
tiring partner would be bound in the same manner, as if
he had continued in the firm until the consummation of the
contract.

From the preceding views it follows, that the county
court were in error in granting all, or any of the defend-
ant's prayers.

Before expressing an opinion upon the judgment of the
court below, in their refusal to grant the prayers of the
plaintiff, it will be necessary to examine one branch of the
offer made by *J. A. Buchanan* to the plaintiff, which has
not heretofore been adverted to, and upon the solution of
which, the event of this cause must mainly depend.  We
advert to that part of the offer, which called upon the plain-
tiff, if he accepted it, *to apprise him of the fact by the re-
turn mail, that he might regulate his foreign orders.*  The
construction of this clause, in a mercantile contract of this
description can, we think, hardly admit of a doubt.  Its
importance to the defendant is manifested by the fact, that
it constitutes a leading feature in the offer ; and by the rea-
son which is assigned for the request, and is just as obliga-
tory as if it had constituted an express condition upon
which the offer was made.  That the defendant sustained
no injury, if an answer had not been returned as requested
does not meet the question.

The defendant would have a right to say *non in hæc foedera veni;* my offer is not to be considered as a binding offer, unless I get the notification of your acceptance by return mail, or by some other mode of conveyance equally as speedy. This we believe to be the true construction of the offer, and whether or not, this part of the offer was complied with on the part of the plaintiff, is a question exclusively for the consideration of the jury; and if the offer in this respect was not complied with, *Torrance* having withdrawn before the 18th of April, the day of the acceptance of the offer, any dispensation with this important feature of the original proposition, would make what was subsequently done, a new contract, entered into after the agency had terminated, and of course, *Torrance* would not in such event be answerable.

Applying the doctrines maintained in this opinion, to the various prayers offered by the plaintiff, it will follow, that the court were right in rejecting all the prayers offered by him.

The evidence of various merchants and traders, offered by the defendant, to prove that it was not generally known in *Baltimore,* or elsewhere, that the defendant was at any time interested in the factory, was, we think, properly admitted. For if it had been generally known in *Baltimore,* that *Torrance* was interested in the concern, a knowledge of that fact might have been presumed in the plaintiff; and if the plaintiff had knowledge of this interest, and no knowledge of the withdrawal, the defendant's liability would continue, until he gave notice of his withdrawal. 1 *Barn. & Adolp.* 11. 20 *Serg. & Lowb.* 333.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.

Dorsey, J. dissented.