## THE VAN CAMP PACKING CO. *vs.* SMITH, ROUSE & WEBSTER.

*Contract by Telegraph—Delay in Acceptance—Lapse of Offer—Meaning of Word for the Court.*

A's offer to purchase goods was met by a counter offer from B con-
tained in a telegram agreeing to the terms proposed, but stating that
"we are to have an immediate wire routing." This telegram was sent
on the evening of October 1st, and delivered to A in Chicago early on
the morning of October 2nd. A did not reply until after 6 o'clock P. M.
on October 2nd, when he sent a night message, which was not deliv-
ered to B until the morning of October 3rd. The time required for the
transmission of a telegram from A to B during the day was about one
hour. *Held*, that B's offer required a prompt acceptance; that the de-
lay of nearly a whole day caused it to lapse and that no contract was
made by the despatch of the acceptance on the evening of October 2nd.

When an offer is conditioned upon an immediate acceptance, the mean-
ing of the word *immediate*, under the circumstances of the case, is for
the Court to determine.

Appeal from the Circuit Court for Harford County (FOWLER, C. J.)

The cause was argued before McSHERRY, C. J., PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Joseph C. France* and *John L. G. Lee* (with whom were *George R. Willis* and *James McEvoy, Jr.*, on the brief), for the appellant.

The Court below erred in granting the first prayer of the de-
fendant and taking the case from the jury. The reason indi-

cated by the Court is that the condition of immediate routing or shipping instructions was not complied with.

The word "immediate" is a relative term and depends upon the circumstances of each case. And it is always a question for the jury to determine under the instructions of the Court.

It is a question to be submitted to the jury whether an offer is accepted or not. There is a Maryland case exactly similar to the case at bar where this Court ruled that the immediate acceptance was a question for the jury. "My offer is not to be considered as a binding offer unless I got the notification of your reception by return mail. This we believe to be the true construction of the offer, and whether or not it was complied with on the part of the plaintiff is exclusively for the consideration of the jury." *Bernard* v. *Torrance*, 5 Gill & J., 383.

The Court below stated that there was a contract or conditional sale provided it should be accepted promptly. That said contract was not accepted promptly.

"The words forthwith and immediately have the same meaning. They are stronger than the words within a reasonable time and imply prompt, vigorous action without any delay. And whether there has been such action is a question of fact having regard to the particular circumstances of the case." *Regina* v. *Justices*, 4 Q. B. D. 471.

In *Rokes* v. *Amazon Insurance Co.*, 51 Md. 512, "immediate proofs of loss" was held to mean within a reasonable time. In *Shafer* v. *Farmers Mutual Insurance Co.*, 80 Md. 563, forthwith was held to mean within a reasonable time. In *Gaddes* v. *Howell*, 31 N. J. L. 316, it was said: "The word immediately does not in legal proceedings necessarily import the exclusion of any interval of time. It is a word of no very definite signification and is much in subjection to its grammatical connections."

The defendants also knew that brokers are out of their offices at times, Nicholls being out sometimes for three hours.

Upon the question of any acceptance of a contract the facts are for the jury. *Burdick Sales*, 135; *Burdick Cases on Sales*,

407; *Morse* v. *Moore*, 83 Me. 473 (1891); *Cordage Co.* v. *Rice*, 5 N. D. 432 (1896).

"Every offer must be accepted in a reasonable time depending on the circumstances of each case." *Parsons Contracts*, vol. 1, p. 481. "In trials by jury it is the province of the presiding Judge to determine all questions on the admissibility of evidence to the jury as well as to instruct them in the rules of law by which it is to be weighed." "Whether there is evidence or not is a question for the Judge; whether it is sufficient evidence is a question for the jury." *Greenleaf Evid.*, vol. 1, sec. 49; *Bank* v. *Bank*, 36 Md. 21. "Whether the word 'month' is lunar or calendar month is a question of law; but whether the parties in the parlicular case intended to use it in the one sense or the other is a question for the jury." *Greenleaf Evid.*, sec. 49; *Bannon* v. *B. & O.*, 24 Md. 124; *Sparf & Hansen* v. *U. S.*, 156 U. S. 51; *B. & O.* v. *Worthington*, 21 Md. 295; see *Law Review*, No. 3, 1845, pp. 27–44.

The question here is not one of construction or interpretation; Smith, Rouse & Webster made an offer and whether it was accepted or not was for the jury. The Court should have instructed the jury that if they found the letter telegrams and sales tickets as given in evidence, and should find an acceptance in a reasonable time that would constitute a reasonable contract and the plaintiff would recover. "Whether there has been unreasonable delay is a mixed question of law and fact to be decided by the jury." *Mellish* v. *Rawdon*, 9 Bing. 416. "The Judge is to inform the jury as to the degree of diligence, etc., which the law demands and the jury are to find whether that duty has been done." *Burton* v. *Griffiths*, 11 M. & W. 817; *Reece* v. *Rigby*, 4 B. & Ald. 202.

On the whole case, it is submitted: 1st. The Court below erred in ruling, as a matter of law, that the appellant had failed to give "immediate wire routing" as required by the appellees in their telegram assenting to the substitution of the appellant as purchaser under the contract in suit. This telegram was received by Nicholls in Chicago on the morning of October 2nd, and a duplicate thereof in the afternoon of the

same date; he communicated with Van Camp at Indianapolis, and on the afternoon of October 2nd, wired shipping instructions.   On the same day, this telegram was confirmed by a letter, which indentified the 5,000 case lot (if there was any need of indentification) as that "purchased from you through Johnson and North."   The appellees admit that they duly received this letter; and in due course of mail, it would have reached Belair on October 4th.   On October 4th, at 4.08 P. M., Nicholls received a telegram from the appellees: "Shipping Van Camp tomatoes unlabelled Indianapolis, as per your final instructions."   Allowing for the difference of time between Chicago and Belair, this telegram must have left Belair about 5 o'clock in the afternoon, and, certainly, after the appellees had received Nicholls' letter of October 2nd, confirming his telegram of that day.   No complaint is made that there had been a failure to give "immediate wire routing;" but the shipping instructions, as finally given, are accepted.   The meeting of minds was complete; the identification of the subject matter was positive; and certainly no one would say that Van Camp could have declined to receive the goods.

2nd. The appellees err in their contention, namely: That although they duly received "immediate wire routing," this applied to the original Van Camp lot of 10,000 cases, and not to so-called Schubrick lot of 5,000 cases purchased through Johnson and North.   In all the apparent confusion of the telegrams of October 1st, 2nd and 3rd, there is no real conflict; and, if read in the order of time, it will be seen that they afford no ground whatsoever for any misunderstanding.   The defense seems to be a shrewd move to confuse the sale of the Schubrick lot of 5,000 cases made to Van Camp by Smith, Rouse & Webster on their own account as *principals* with the sale of the said 10,000 cases made to Van Camp by Smith, Rouse & Webster as *agents.*

*S. A. Williams*, for the appellees.

1. The contract shown by the sales ticket offered in evidence was not complete until one part was returned to appel-

lees, with Nicholls & Co.'s acceptance.    Instead of this they
wrote, saying the purchase was for Grafton Johnson's man,
Schubrick, and they promised to forward sales ticket for Schu-
brick's acceptance and return.    To the substitution of Schu-
brick on these terms appellees made no objection.    This had
not been done on October 1st; on the contrary, appellees had
been notified of the trouble with Schubrick and of Nicholls &
Co.'s uncertainty as to the outcome of the purchase.    In view
of this incompleteness, *the sales ticket could not be assigned.
There was yet no contract to assign.*    A new party, the appel-
lant, was proposed, which could not be brought in without
appellees' knowledge and assent. *National Bank* v. *Hall*, 101
U. S. 50.

2. The contract being thus imcomplete and Nicholls & Co.
desiring to substitute the appellant as purchaser instead of
Schubrick, the assent of the appellees to such substitution
was conditioned upon their receiving *immediate shipping in-
structions by wire for the goods mentioned in sales ticket.*

The appellees could attach a condition to their assent to
the substitution of a new party to the contract as freely as
they could have required such condition in the beginning, and,
until it was complied with, the contract lacked the element of
mutuality and could not be enforced.    The element of mutu-
ality is as essential to the modification of a contract already
made as it is to making it originally.    *Utley* v. *Donaldson*, 94
U. S. 47.

3. The condition upon which the appellant was to be sub-
stituted for Nicholls & Co. and Schubrick in the purchase of
the 5,000 cans of tomatoes, referred to in the sales ticket, and
called in the record the "Schubrick goods," was not met.

*a. The shipping directions were not wired immediately.*    The
condition of "immediate wire routing, otherwise must cancel,"
was made to Nicholls & Co. by a telegram which reached the
Chicago telegraph office at 8.05 of the evening of October
first, and was delivered not later than the opening of business
on the morning of the second.    It meant shipping directions
by wire at once, not "in a day or two," or "tomorrow," as had

been promised appellees with reference to the other Van Camp goods, even as late as the first and second of October, the very days of this telegram, but "immediately," at once, without further delay, and "by wire."

In view of Nicholls' delay in concluding the Schubrick purchase and the rapidly rising market, this condition was entirely reasonable on the part of the appellees. The purchase had been kept open since September 20th, the packers were anxious to ship and get their money, the delay in confirming the sale furnished them great temptation to accept a higher price and appellees could not be expected to hold them longer and take the risk involved. Their telegram to Nicholls with reference to Schubrick cancelling contract required action that day and was a forerunner of the condition imposed on Van Camp. Talking to Indianapolis by wire from Chicago was at most but the work of half an hour, and the reply to Bel Air took no longer, so that final shipping directions should have reached appellees during the business hours of the second at least. Instead of this we have the *three telegrams* from Nicholls & Co., set out in statement, the first delivered appellees on the morning of the third, and the other two on the morning of the fourth.

It is submitted that the failure to give final shipping directions until the 4th, is not "immediate wire routing," and the Court below was correct in so ruling as a matter of law.

*b.* But supposing, for the sake of the argument only, that "immediate wire routing" was given, as appellants contend, the directions were not clear and explicit, and they were so associated as to be more readily and naturally referred to the 10,000 case Van Camp purchase of September 23rd, than to 5,000 cases Schubrick goods.

PAGE, J., delivered the opinion of the Court.

This suit was brought to recover damages for a breach of contract. It is alleged, that the appellees agreed to sell and deliver to the appellants, five thousand cases of canned tomatoes, but neglected or refused to deliver the same.

The Court by its instruction took the case from the jury and directed a verdict for the appellees.

The alleged sale was negotiated by Johnson & North, of New York City, on account of the appellees to William Nicholls & Co., of Chicago. The contract or "sales ticket," sent to Nicholls & Co. was as follows:

Bel Air, Md., Sept. 20, 1901.

Sold to Messrs. William H. Nicholls & Co., Chicago, Ill., for account of Smith, Rouse and Webster, Bel Air, Md., five thousand (5,000) cases No. 3 standard tomatoes at 87½ cents per dozen f. o. b. county, for buyers labels $.90 per thousand for same. Terms net cash. To be of 1901 packing and shipment during the present season.

Smith, Rouse & Webster."

Acccepted

No. 874 Smith, Rouse & Webster"

This was executed in duplicate; and on one of the copies a line had been drawn through the words "Nicholls Co." and above them was written "Van Camp Packing. Indianapolis."

On the 23rd of September Nicholls & Co. informed the appellees, by letter of that date, that the goods had been purchased on account of one Schubrick; and later on, by letter of 28th of September wrote the appellees that they had had trouble with Schubrick and that, "while the matter is still unsettled we write you as early as possible to see if arrangements can be made, either to cancel the purchases which we feel there will be no trouble, or should you want to take them on your own account, on the original purchase at 87½c. net cost." On the first day of October (presumably in reply to this letter), the appellees telegraphed to Nicholls & Co.; "Schubrick may cancel, but must act today." On the same day Nicholls wired to the appellees, "all tomatoes for account of Schubrick we have turned over to Van Camp Packing Company." The effect of this correspondence amounted to an offer to cancel the Schubrick matter, and to turn the goods over to the Van Camp Company. The appellees accepted the offer by their telegram of the 1st of October, subject however to the condition that "we (they) have an immediate wire routing, otherwise must cancel." The offer thus made was an

entirely new one, having no necessary connection with the Schubrick transaction, and open for the acceptauce of the appellees with or without conditions. The actual acceptance of the appellees was upon the condition that the appellees should have immediate wire routing. We think this, when agreed to by Van Camp, established a new contract, whereby the Van Camp Packing Company was to secure the tomatoes, provided the condition of "immediate wire routing" was complied with.

The Court below also held, that there was no evidence from which the jury could find that the condition had been performed. The proof shows that the telegram of the appellees accepting the offer to turn the tomatoes over to Van Camp, subject to the condition, was sent on the evening of the first of October, as a night message; it reached Chicago at 8.06 P. M. of the same day and was delivered early on the morning of the second; Nicholls made no reply giving routing until 6.25 P. M. of the second, an hour that made it a night message, not deliverable until the morning of the third. It thus appears, that instead of writing the routing immediately, there was a delay in so doing from early in the morning of the second to such an hour of the evening of that day that the telegram could not be, and was not, delivered in Bel Air until the morning of the third. The appellees instead of having an "immediate wire," did not have it until the next day. The testimony shows that it requires about an hour for a telegram sent from Chicago to be received in Bel Air; so that there was a delay of a whole day, or nearly so. Nicholls knew or ought to have known all these facts; his delay therefore in sending the reply, must have been deliberate.

The construction of the telegram of the appellees accepting the offer subject to the condition was for the Court; whether under this construction it had been complied with was for the jury. In the case of *Bernard* v. *Torrance*, 5 G. & J. 405, where the letter containing the offer had the proviso, "if you accept this offer let me know by return mail, that I may regulate my foreign orders," the Court construed the contract to mean that the acceptance must be made by return mail or by

some "other mode of conveyance equally speedy, and whether or not" this part of the offer was complied with "was a question exclusively for the consideration of the jury." We are therefore of the opinion, that the meaning of the word "immediate" as used here, was a matter for the Court to decide. In so doing, this Court can not be shut out from the same light, which the parties enjoyed when the telegram was sent and delivered; it is entitled to place itself in the same situation the parties were in, "so as to view the circumstances as they viewed them" and so as to judge of the meaning of the word. *Roberts* v. *Bonaparte*, 73 Md. 204.

It cannot be contended, in the light of these circumstances, that the appellees intended to be understood as demanding the wire routing instantly; that was impossible. Nor do they require it to be, but as soon as practicable or reasonable. They used the word "immediate;" that is as speedily as prompt action, without delay, would enable the appellant to furnish it. The Schubrick transaction had then been standing open for more than ten days; the price of tomatoes was rising rapidly; and it is entirely reasonable to assume that the appellees were earnestly desirous to close the matter up speedily, so that they could take advantage of the rising market. They therefore made it a condition precedent, that the appellants should give them "an immediate wire routing."

As we have seen the wire routing was delayed for a whole day. The Court below committed no error in ruling that there was no evidence which would "justify him in letting the case go the jury."

The first exception was to the exclusion of certain testimony, consisting of the written and oral declarations of the parties, and offered by themselves respectively, in which each construes their own acts. This exception was not relied on at the argument, and we content ourselves by saying, that we find no error in the ruling of the Court.

*Judgment affirmed.*

(Decided June 22nd, 1905.)