## BAKER *v.* SHETTLE

[No. 106, October Term, 1949.]

*Decided March 10, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Foster H. Fanseen,* with whom were *John Grason Turnbull* and *Milton I. Vogelhut* on the brief, for the appellant.

*Michael Paul Smith,* with whom was *J. Elmer Weisheit, Jr.,* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

This case was tried in the Circuit Court for Baltimore County before a judge thereof for damages to a tractor-trailer and the loss of its use, resulting from a collision with an automobile. A verdict was rendered in favor of the defendant, and from judgment thereon the plaintiff appeals.

The defendant, John F. Shettle, who at the time of the accident was 21 years old, left his father's home in Towson, on January 16, 1948, at about eight o'clock, driving his father's Nash automobile, with his sister, who was 15 years old, to go to the Senator Theatre. At the place of the accident York Road is 44 feet wide and can accommodate four lanes of traffic, two northbound and two southbound. The defendant was driving in the southbound lane to the right of the middle of the road; directly behind him a man by the name of Roberts was following. A southbound car in the westernmost lane was close to the rear of the defendant's car. The plaintiff was driving his tractor-trailer, loaded with kerosene, north on the York Road, on the east side thereof and in his lane of traffic. A northbound car passed the tractor-trailer when it was opposite to the southern entrance of the Maryland State Teachers College, which is on the West side of the York Road, and without warning turned to the left for the apparent purpose of going into the College grounds. The defendant swerved his car to the left and struck and damaged the tractor-trailer. The plaintiff testified in the case but called no witnesses.

Corporal Bosley, of the Baltimore County police force, testified that when he arrived at the scene of the accident the defendant was incoherent, and had apparently suffered a concussion of the brain. His sister had been thrown out of the car and was lying unconscious near the tractor-trailer. Both the defendant and his sister were taken to a hospital. Bosley stated there were no skid marks. Bosley interviewed the plaintiff, who told him that a car traveling north passed him at Hillside (which is an avenue that runs east from the York Road and a short distance south of the entrance to the State Teachers College); when about fourteen feet ahead of him this car made a sharp left-hand turn into the entrance of the College, in front of the car driven by the defendant, who swerved his car and ran into his tractor-trailer. At the trial the plaintiff denied this and testified

that the defendant, when at a point about 150 feet north of the accident, running between 40 and 50 miles an hour, passed a southbound car, swerved his car and ran into his tractor-trailer; that there were a number of cars traveling southbound and all stopped in time to avoid hitting the car that turned into the College entrance. At the traffic hearing he made none of the charges that he testified to, and both he and the defendant were exonerated of violating traffic regulations. He was asked why he did not describe how the accident happened to the officer or to the trial magistrate at the traffic hearing, as he described it at the trial of this case. He answered, "I didn't broadcast it to anybody".

A statement of what John Melvin Roberts would testify to, if present, was admitted and forms a part of the record in this case. Roberts, in his statement, said that he was following the defendant's car and that he would judge the defendant was traveling about 25 miles per hour. "The car ahead of me was traveling in the southbound car tracks. All of a sudden the northbound car made a left turn directly in front of the southbound car. The southbound car pulled to the left and struck the northbound oil truck about at the cab." He further said that "the northbound car backed up on the tracks and then drove into the entrance of the State Normal School and stopped." He then drove to the police department and reported the accident.

The defendant did not testify specifically at what speed he was driving at the time of the accident, but did say that he was running at about the same speed as the car that was behind him, which turned out to be the Roberts car, and the car that was traveling in the westernmost lane a short distance behind him. Roberts thinks that they were traveling at about 25 miles per hour. The defendant testified that when this car made the left-hand turn for the evident purpose of entering the State Teachers Grounds, he was "not more than fifty feet, in fact, I will say it was not more than thirty feet. I had no warning that the car was going

to turn immediately to the left. I immediately applied my brakes and tried to swerve around to the rear of this car as it made a left turn in front of me. I was knocked unconscious."

The night of the accident was clear and the road was dry. All cars had lights on, as well as the tractor-trailer. Defendant testified that he did not see the tractor-trailer.

The court, on the facts of the case, was of opinion that the defendant was confronted with an emergency. It is held by the weight of authority, that if there is evidence in a case legally sufficient to show that an emergency existed, it becomes a question of fact for the jury. It must be found that a defendant in such a case was free from negligence, because an emergency can never exist if the accident was caused by negligence, and what might ordinarily be negligence in a case where no emergency exists, may not be negligence in the case of an emergency. In such a situation one does not have time to think what is the best thing to do; the emergency occurs so quickly that it would be unjust to apply the rule which governs in the ordinary case. So that the rule in an emergency is that one must act as a reasonably prudent man would act in view of the emergency. *Allen v. Schultz*, 107 Wash. 393, 181 P. 916, 6 A. L. R. 680; *Southall v. Smith*, 151 La. 967, 93 So. 402, 27 A. L. R. 1197; *Lange v. Affleck*, 160 Md. 695, 155 A. 150, 79 A. L. R. 1277.

In *Fogle v. Phillips*, 191 Md. 114, 119, 60 A. 2d 198, 200, the court said: "Where the facts are disputed the question whether an accident was unavoidable as a result of an emergency is for the jury. *Newman v. Stocker*, 161 Md. 552, 157 A. 761; *Consolidated Gas, Electric Light & Power Co. v. O'Neill*, 175 Md. 47, 49, 200 A. 359." *State, Use of Stehley v. Belle Isle Cab Co., et al.*, 194 Md. 550, 71 A. 2d 435.

In the case at bar it is apparent from the testimony that the fact as to whether or not an emergency existed was disputed. The lower court saw all of the witnesses,

except one, and we are not prepared to say that his finding of fact was clearly wrong.

It is contended that because the defendant did not see the lighted tractor-trailer his testimony is not worthy of belief. It is strange that he did not see the tractor-trailer, but he might well have been looking straight ahead at the on-coming car and not seen the tractor-trailer. This case is somewhat different from the facts in the cases where we have said that if a witness testifies that he did not see or hear a certain object, which if he had looked and listened he would necessarily have seen or heard, his testimony is not worthy of consideration. But even excluding the evidence of the defendant we think the weight of the evidence supports the finding of the court.

*Judgment affirmed, with costs.*