## WILMER
### v.
### RITTENHOUSE et al.
### No. 6642.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 11, 1953.
Decided Dec. 31, 1953.

Thomas F. Comber, 3rd, and John D. Alexander, Baltimore, Md. (Constable, Alexander & Daneker, Wm. Pepper Constable, Baltimore, Md., and Albert B. Mosebach, Elkton, Md., on brief), for appellant.

Edward F. Shea, Jr., and Theodore Sherbow, Baltimore, Md. (Sherbow & Sherbow, Baltimore, Md., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

William Wilmer, a citizen of Maryland, brought suit in the Circuit Court of Cecil County, Maryland for injuries suffered by him when he was struck by a tractor-trailer belonging to Roy Rittenhouse and driven by F. P. Cook, citizens of Pennsylvania. The case was removed to the federal court and tried before the District Judge without a jury and judgment was entered for the defendants

on the ground that the accident was caused by the plaintiff's own negligence.

We think that the judgment must be reversed on the uncontradicted evidence and the findings of fact of the District Judge. The plaintiff was a young man 24 years of age, employed as a truck driver by the Maryland State Roads Commission. About 6 P.M. on June 19, 1952 he was driving a truck on U. S. Highway 40 toward Elkton, Maryland, and because of difficulty with the vehicle pulled off the paved surface a distance of six or seven feet to the shoulder of the road. His uncle, who was following him in another car, also drove off the road and parked immediately behind him.

The plaintiff raised the hood of his car and requested his uncle to bring him a screwdriver. Looking back at this moment along the road, which was wet with rain, he saw the defendant's tractor-trailer at a distance approaching on a down grade in the right hand lane behind another car which was traveling 35 to 40 miles an hour. It seemed to him that the tractor-trailer was traveling so much faster than the car ahead that it would overtake and run into it, and that the driver applied his brakes and thereupon the vehicle jackknifed and came sliding down the road. Being alarmed lest it would overturn and injure him he called to his uncle and rushed into the open field at the right side of the road. The field was elevated two feet above the road and was covered with tall grass. After he had gotten about 50 to 60 feet into the field he heard a noise and saw the defendant's vehicle coming off the road directly toward him "jumping sideways". He was terrified and, believing that he could not avoid the vehicle, dropped to the ground in the hope that it would straddle him, but he was struck by the wheels of the defendant's tractor-trailer and badly injured.

The testimony offered on behalf of the defendants differs in certain details but not in the main outlines of the story. The defendant driver had had long experience with heavy truck equipment.

The tractor-trailer in this case was 45′ long and weighed 27,000 pounds. The driver was aware that he was approaching a dangerous section of the highway. He was traveling between 30 and 35 miles per hour, the speed limit set for this section of the road, as was a car ahead of him which he had been following for three-quarters of an hour. He probably gained a little on this car coming down the hill, but he did not lose control of his tractor-trailer and it did not jackknife; but the preceding car which was then 150′ ahead of him, came to an abrupt halt abreast of the plaintiff's car, and he immediately applied his brakes causing the tractor-trailer to slide 10 or 15′ with the wheels locked. He said that he slowed down to ten miles an hour and undoubtedly could have stopped his car, and remained on the road without hitting the car ahead; but instead he chose to enter the field in a diagonal direction rather than take the one hundred to one chance of hitting the car. As he turned into the field he saw the plaintiff start to run at right angles to the road across the field and noticed that the direction he was taking was bound to bring him across the path of the tractor-trailer. At about this time the driver accelerated his speed in order to keep the unit from sliding on the wet grass, and then gradually let it slow down. Rather than run the plaintiff down he deliberately jackknifed the trailer, but the plaintiff seemed to reverse his direction and to fall under the vehicle as it was sliding on the grass.

The judge found no negligence in respect to the rate of speed of the tractor-trailer while it was on the road or in the action of the driver in driving the car into the open field; but he found that the driver was negligent in accelerating the speed after he had entered the field. In this respect the judge said:

"However, when the defendant driver saw the plaintiff, as he admitted, running across the field towards him, it was negligent for him not to have slowed down. He said that while in the field, which

he said he traversed for about 139 feet, he never went faster than ten miles per hour, but the plaintiff's uncle testified that his rate was never slower than 30 or 35 miles per hour while in the field. His speed, from the conflicting testimony, remains a matter of speculation. But the critical moments had passed. He and his equipment were out of danger in the open field, and apparently had good traction for getting out, with no difficulty. It appears that he may have been too intent on completing his trip on schedule time, or avoiding controversy or possible difficulty with State police."

Turning to the conduct of the plaintiff the judge found that it was not negligent for him to dash into the field in order to run away from what he feared would be a crash between the tractor-trailer and his car; but that he was extremely negligent in continuing to run into the field with the tractor-trailer in plain sight and throwing himself on the ground in front of it. The judge concluded that the plaintiff's actions were caused by sheer fright or over-excitement, but that when he put himself in the path of danger he brought about the accident by his own fantastic, negligent conduct.

That the plaintiff was not negligent in running into the open field, a seemingly safe place, in order to escape an apprehended danger from the tractor-trailer is clear, since the testimony on both sides shows that he had cause for alarm in the movements of the huge vehicle as it approached the scene of the accident. That his actions, after he entered the field and unexpectedly encountered the very danger from which he was fleeing, were due to terror and bewilderment is equally well shown, for it is inconceivable that he would have deliberately put his life in jeopardy. The emergency was so sudden that there was no room for reasoned judgment; and it follows, when these circumstances are associated with the finding of the judge that the driver of the tractor-trailer was negligent in not slowing down when he saw the plaintiff run across the field into a position of danger, that the case is governed by the accepted rule that if one adopts an unsafe course as the result of fright or bewilderment caused by the negligence of another, his conduct does not amount to contributory negligence and bar recovery for his injuries.

The Maryland decisions are in accord with this rule as applied to either party in a suit for negligence. In Baker v. Shettle, 194 Md. 666, at page 671, 72 A. 2d 30, at page 32, where the defendant driver crossed the center line of the road in order to avoid a car which suddenly appeared in front of him without warning, the court said:

"The court, on the facts of the case, was of opinion that the defendant was confronted with an emergency. It is held by the weight of authority, that if there is evidence in a case legally sufficient to show that an emergency existed, it becomes a question of fact for the jury. It must be found that a defendant in such a case was free from negligence, because an emergency can never exist if the accident was caused by negligence, and what might ordinarily be negligence in a case where no emergency exists, may not be negligence in the case of an emergency. In such a situation one does not have time to think what is the best thing to do; the emergency occurs so quickly that it would be unjust to apply the rule which governs in the ordinary case. So that the rule in an emergency is that one must act as a reasonably prudent man would act in view of the emergency."

In Lashley v. Dawson, 162 Md. 549, at page 564, 160 A. 738, at page 744, where the plaintiff, in order to avoid an approaching car, took refuge in a ditch side of the road, the court said:

" * * * The plaintiff below * * * had, it is true, in a well-meant and humane effort to prevent a serious accident and perhaps save human life, placed himself in a posi-

tion of grave peril which he was not obliged to assume. But he had retreated from that position and at the time of the accident was entirely off the traveled part of the road, standing in a ditch, in what he must necessarily have believed, in the haste and confusion of the moment, to be a safe place. Whatever might be said of his conduct under other circumstances, when considered in connection with the reason for his being where he was when he was struck, it cannot be characterized as negligence in law. For the law measures acts done under the spur and stress of sudden emergencies such as confronted him, when done for the purpose of averting serious or even fatal consequences to others, with more indulgence than where they are impelled by no such motive. To constitute negligence as a matter of law, the act relied upon must present some feature of reckless indifference to one's own safety, which leaves no room for ordinary minds to differ as to its quality."

The judgment will be reversed with direction to enter judgment for the plaintiff in such amount as may be found proper in further proceedings.

Reversed.