## JOHN KEITH LUNSFORD ET AL. *v.* BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY ET AL.

[No. 159, September Term, 1976.]

*Decided July 14, 1977.*

666

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Martin H. Freeman,* with whom were *Bulman, Goldstein, Feld & Dunie, Michael E. Miller* and *Zanecki, Miller & Bortner* on the brief, for John Keith Lunsford et al.

*Patrick A. O'Doherty,* with whom were *O'Doherty, Gallagher & White* on the brief, for Charles L. Hudson. *Paul M. Nussbaum,* with whom was *Richard E. Ekstrand* on the brief, for Board of Education of Prince George's County.

SINGLEY, J., delivered the opinion of the Court. DIGGES and ELDRIDGE, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which DIGGES, J., concurs at page 678 *infra.*

On 23 May 1972, John Keith Lunsford (Keith) was a 13-year-old seventh grade student at the Walker Mill Junior High School (the School) in Prince George's County. On the afternoon of that day, Keith was assaulted by a group of his fellow students, while on his way from the School to his home, and sustained serious injuries. Keith, by Shirley Grimes, his mother and next friend, and his mother, in her individual capacity (the Appellants), each brought suit for damages in the Circuit Court for Prince George's County against the Board of Education of Prince George's County (the Board) and Charles L. Hudson, the principal of the School (the Appellees); and Peter B. Blauvelt, the security officer at the School.

The cases were consolidated and tried before a jury on the issue of liability only.[1] At the conclusion of the plaintiffs' case the motion of defendants for a directed verdict in their favor was reserved. At the conclusion of the entire case,[2] the motion was denied. The jury returned a verdict in favor of the Board and Hudson, the principal. The plaintiffs appealed to the Court of Special Appeals; the defendants cross appealed from the order denying their motion for a directed verdict. We granted certiorari before the case came on for hearing in that court.

Charles Hudson had become principal of the School when it opened in the fall of 1970. Prior to the assault on Keith, there had been instances when students had been beaten and robbed by fellow students. Keith and his mother were prepared, but were not permitted to prove that for 10 days before the assault on Keith, there were rumors among the students that a racial fight was planned for 23 May. On the day of the assault, groups of 10-17 students were seen by teachers, and by the principal and vice principal, running through the hallways, knocking down smaller groups of students.

A ball game had been scheduled for the afternoon of 23 May. Students who had purchased 25¢ tickets to the game were dismissed at 1:30; those who had no tickets were directed to study halls where they remained until 2:40, the end of the school day.

About an hour before the ball game, Janet Rackey, a student, went to the School office, where a telephone call was made to her home, in order that she might obtain permission to leave. When she left the School she was accosted by a group of students who chased her back into the School building. Janet returned to the School office, and had an unidentified person, whom she believed to be a secretary,

---

1. Prior to trial, the motion of Blauvelt, the security officer, for summary judgment in his favor was granted. No appeal was taken from this order.

2. The defendants elected to adduce no evidence in their behalf.

place a second call to her mother. Janet was not permitted to testify what she had told her mother.

At about 1:30, Keith left the School by a rear entrance with students who had bought tickets to the ball game. Instead of going to the game, however, he walked to the end of the field and entered the woods which separated the School from the John Bayne Elementary School. It was at this point that he was assaulted by a group of 17 to 20 students.[3] Ultimately, Keith was able to extricate himself and run to the elementary school, where the presence of a teacher prevented a resumption of the beating.

The principal thrust of the Appellants' argument is that the judgments entered in favor of the Board and Hudson should be vacated because the trial court erred in its rulings on the evidence and in its instructions to the jury as regards Hudson's notice of impending violence.

Keith and his mother contend:

(i) "Notice to the School authorities of impending violence may be implied in fact (implied actual notice) or implied in law (constructive notice) from the fact that a large number of students were discussing the impending violence for eight to 10 days prior to attack on Keith Lunsford.

(ii) "Where a student was accosted by a large group of students at the same place as the attack on the appellant but approximately one hour earlier, and recounts the facts of that attack under circumstances which permit an inference that a secretary in the Principal's administrative offices overheard the recount, those facts may be admitted into evidence as relevant, pertaining to the issue of constructive notice to the Principal's administrative staff.

(iii) "Where the Principal of the School is familiar with the School Board policy governing police assistance at

---

3. The record is unclear as to whether the assault commenced on the property of Walker Mill Junior High School. It is clear that it ended on the property of John Bayne Elementary School.

School activities and relating to his responsibilities, that policy may be admitted into evidence.

(iv) "The court erred in failing to instruct that notice of impending violence may be constructive notice.

(v) "The court erred in giving the jury the issue of contributory negligence, when there was no evidence to support it.

(vi) "In light of receipt by the jury of the issue of contributory negligence, the court erred in precluding evidence bearing on Keith's state of mind at the time of the occurrence and in refusing to instruct on the doctrine of emergency.

(vii) "As custodian of Keith Lunsford, the School had a special duty to anticipate and prevent foreseeable harm from third parties and failure to so instruct the jury was error.

(viii) "The court erred in failing to instruct properly on the impact of the failure of a party to call witnesses or present evidence."

(i)

In the first phase of their argument, Keith and his mother contend that notice to the School authorities may be implied in fact (actual notice) or in law (constructive notice) from the fact that students were discussing rumors of impending violence for some days prior to the attack on Keith.

It is quite true that the admission of an extrajudicial statement is not always barred as hearsay, if it is relevant and proffered not to establish the truth of the matter asserted therein, but simply to establish that the statement was made, *McCall's Ferry Co. v. Price*, 108 Md. 96, 69 A. 832 (1908); *Sun Cab Co. v. Walston*, 15 Md. App. 113, 131-32, 289 A. 2d 804, 815 (1972), *aff'd on other grounds*, 267 Md. 559, 298 A. 2d 391 (1973); 6 J. Wigmore, Evidence § 1766 (3d ed. 1940); C. McCormick, Evidence § 249 (2d ed. 1972). The difficulty here is that admissibility hinges on a two-step process: first, that the statement was made, and second, that

it was made to someone who is sought to be charged with notice. The proffered testimony was that of students who had heard *rumors*, not of defendants to whom *knowledge* of the rumors had been communicated. Consequently, it was not relevant, and should have been excluded.

This is quite different from cases involving a *fact* known in a community, knowledge of which may be imputed to a particular group of persons, *Wiley Manufacturing Co. v. Wilson*, 280 Md. 200, 373 A. 2d 613 (1977). *See for example Bernard v. Torrance*, 5 G. & J. 383 (1833); *Cherry v. Hill*, 283 Ala. 74, 214 So. 2d 427 (1968); *Continental Ins. Co. v. Cummings*, 98 Tex. 115, 81 S. W. 705 (1904). *See also* 1 M. Merrill on Notice, § 4 at 3, §§ 38-39 at 27-28, § 41 at 31, § 45 at 37 (1952, 1956 Cum. Supp.).

(ii)

The Appellants next address themselves to the exclusion of Janet Rackey's testimony as regards what she told her mother in a telephone call made from the School office, after she had been granted permission to leave the School, but had been forced to return after having been threatened by a group of students outside. They argue that the testimony was admissible because it was allegedly made in the presence of an unidentified secretary.

Janet was permitted to describe the incident, but was not permitted to say what she had told her mother, the court concluding, quite properly, we think, that because Janet was unable to identify the "secretary" or to establish that she had listened to the conversation, the test of relevance had not been met: no foundation had been laid from which the jury could have inferred that the School administration had been put on notice of the incident by Janet's telephone conversation. In the absence of this foundation, Janet's recounting of the incident to her mother would have been merely cumulative, and its exclusion was harmless, *Marlow v. Davis*, 227 Md. 204, 208, 176 A. 2d 215, 217 (1961). It is interesting to note, moreover, that there was no evidence that either Janet, her mother, or her father had reported the incident to the School authorities.

(iii)

The Appellants next complain that the trial court erred in not permitting a paragraph from the Board's "Recommended Policies and Procedures Governing Police Assistance at School Activities" to be read to or shown to the jury. The paragraph is set out below:

"The responsibility for the administration of the school resides in the Principal and even though he recognizes that he cannot perform all necessary administrative duties himself and seeks the aid of others — assistant principals, counselors, department chairmen, teachers, other staff personnel and school community organizations — to assist him, he can never delegate his responsibilities.[3]

"3. *Principles and Standards, Public Secondary Education in Maryland,* Maryland State Department of Education, May, 1964, p. 48." [footnote in original]

The Appellants sought to have this text incorporated in a jury instruction. Instead, the trial judge instructed the jury as follows:

". . . [T]he responsibility for the administration of the school generally resides with the principal. And, of course, the principal can't perform all necessary administrative duties himself. And he must delegate various functions and duties to other employees, assistant principals, counsellors, teachers, other staff and personnel.

"But, of course, the responsibility . . . to set up the general system and procedures, et cetera, does reside in the principal.

"He can't be held responsible for something happening when he's off sick. But on the other hand, if he — the system that he set up that was — or failure to set up a proper system, he would be held responsible for whether he was off sick or

there while something occurred as a result of it. This is considering the case against Charles Hudson, the principal of the school.

"If you find from the evidence that he violated and adopted a policy and that the policy, the violation of that policy was the proximate cause of the injury complained of in this case, then he would be liable, but there must be two things. One is the violation of the policy. You have to be convinced of that by a fair preponderance of the evidence. And then [two], that there is the connection between the violation of that policy and the injury that was sustained by the Plaintiff."

The Appellants contend that this instruction "devastated" their case. The Appellees do not see it quite this way and neither do we. They point out that the text on which the Appellants rely, a recommendation promulgated by the State Department of Education, is not a precise statement of applicable law as regards delegation of responsibilities, and that this was corrected by the instruction given. We agree. *Compare Berg v. Merricks*, 20 Md. App. 666, 318 A. 2d 220, *cert. denied*, 272 Md. 737 (1974). For a discussion of non-delegable duties, *see* 1 Encyclopedia of Negligence § 139 at 548-49 (1962); 78 C.J.S. *Schools and School Districts* §§ 237-38 at 1193-98 (1952) and 79 C.J.S. *Schools and School Districts* § 493 at 442 (1952); 53 Am.Jur.2d *Master and Servant* § 423 at 438 (1970). *See also Associates Discount v. Hillary*, 262 Md. 570, 578-79, 278 A. 2d 592, 596-97 (1971); *Samson Co. v. Brusowankin*, 218 Md. 458, 464, 147 A. 2d 430, 434 (1958); *2310 Madison Av. v. Allied Bd. Mfg. Co.*, 209 Md. 399, 121 A. 2d 203 (1956); *Lawson v. Clawson*, 177 Md. 333, 9 A. 2d 755 (1940).

(iv)

The Appellants next say that the trial court erred in failing to instruct the jury on the issue of constructive notice. The short answer to this is that the instruction requested by the Appellants was substantially incorporated

in the charge given by the court. We think that the court fully and fairly instructed the jury on notice:

". . . The question is, one, whether or not under the circumstances that you find from the evidence existed, that knowledge of any other kind of acts or conduct on the part of the students occurring prior to this, whether the school authorities were on notice that there was a general field of danger and they should have anticipated it.

"And in your deliberations I think it would be best to consider that first. If you conclude that under the circumstances that a reasonable and prudent principal, and reasonable and prudent authorities, teachers, employees of the Board of Education were not on notice of the existence of a general field of danger under those circumstances, that ends it. Your verdict would have to be for the defendants, because it was necessary that you be convinced by a fair preponderance of the evidence that they were on such notice, . . ."

(v)

The Appellants say that the trial court erred when it instructed the jury on the issue of contributory negligence because there was no evidence that Keith was contributorily negligent.

While there must be some evidence of a plaintiff's negligence to support a jury instruction on contributory negligence, *Gutterman v. Biggs*, 249 Md. 421, 240 A. 2d 260 (1968), we think that there was ample evidence from which the jury could have found negligence on Keith's part. Keith's own testimony was that he had heard rumors of impending violence at the School for a week or 10 days. He testified that he had made three efforts to leave the School on 23 May. The first time, in the morning, he was stopped at the door, and turned back by the vice principal. Next, he feigned illness, went to the School nurse, and was denied permission to

leave. Finally, he bought a ticket to the ball game, and admitted that he customarily went home instead of attending the game. It was Keith who decided to walk home through the woods, to continue his approach to a group of students whom he saw at the far end of the School property, instead of remaining on the ball field or returning to the School, which were the only places where he had a right to be. Even when accosted, he ran away from the School, not toward it. In short, there was ample evidence from which the jury could have found that Keith had not acted in a reasonably prudent manner. *Mershon v. Gino's, Inc.*, 261 Md. 350, 276 A. 2d 191 (1971); *Hynes v. Hutzler Bros. Co.*, 261 Md. 345, 276 A. 2d 99 (1971); *Kasten Constr. Co. v. Evans*, 260 Md. 536, 541, 273 A. 2d 90, 92-93 (1971); *Lindenberg v. Needles*, 203 Md. 8, 97 A. 2d 901 (1953); *Robertson v. Shell Oil Co.*, 34 Md. App. 399, 367 A. 2d 962 (1977).

(vi)

Since the jury was instructed on the issue of contributory negligence, the Appellants contend that the trial court erred when it excluded evidence bearing on Keith's state of mind at the time of the occurrence and in refusing to instruct on the doctrine of emergency.

This argument, to us, seems lacking in substance. It would appear to be grounded on the rationale of *Wilmer v. Rittenhouse*, 209 F. 2d 554 (4th Cir. 1953), which adopted the rule of *Baker v. Shettle*, 194 Md. 666, 671, 72 A. 2d 30, 32 (1950) and *Lashley v. Dawson*, 162 Md. 549, 564, 160 A. 738, 744 (1932), that one frightened or bewildered as a consequence of the primary negligence of another is not necessarily guilty of contributory negligence. Assuming the validity of the proposition, we fail to see how it could be applicable here. On the day in question, Keith had made three efforts to extract himself from the School: only the last was successful. Even then, he had other options: he could have gone to the study hall, from which he would have been returned to his home by bus; he could have gone to the ball game, or he could have walked home on public streets. Instead, he elected to walk through the woods, and continue

walking in the face of a threat of danger. He commenced to make choices in mid-morning, and he ultimately selected the most hazardous of all. We simply fail to see the relevance of his testimony as to a state of mind which led him to walk through the woods or how the doctrine of emergency could be apposite when of his own volition he first walked into, and later ran through, a field of danger, *see Critzer v. Shegogue*, 236 Md. 411, 418-19, 204 A. 2d 180, 184 (1964).

## (vii)

This argument is bottomed on the doctrine that the relation of a school vis à vis a pupil is analogous to one who stands in loco parentis, with the result that a school is under a special duty to exercise reasonable care to protect a pupil from harm, *Segerman v. Jones*, 256 Md. 109, 123-24, 259 A. 2d 794, 801 (1969); Restatement (Second) of Torts § 320 at 130 (1965); [4] 2 Harper and James, The Law of Torts § 18.7 at 1058 (1956); Annot., 86 A.L.R.2d 489, 565-68 (1962); Annot., 32 A.L.R.2d 1163, 1178-81 (1953); Annot., 160 A.L.R. 7, 155-56 (1946).

The Appellants requested an instruction:

> "A School's employees charged with security and protection of students at the school are charged with that degree of reasonable care such as a parent of ordinary prudence would exercise under comparable circumstances."

---

[4]. "§ 320. Duty of Person Having Custody of Another to Control Conduct of Third Persons

"One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

(b) knows or should know of the necessity and opportunity for exercising such control."

Instead, the court's instruction was:

"They [Defendants] have a duty, the school authorities have a duty to exercise reasonable care to look out for the safety of school children while they're under their control. Somebody sends a child to school, the child ceases at that time to be under the authority of the parents and is under the authority of the school system.

"And they have the responsibility, of using reasonable care, the same responsibility that is analogous to the responsibility of a parent when they're at home."

We find no error.

### (viii)

Finally, the Appellants complain because the trial court refused to give the following instruction to the jury:

"If you find that it would be most natural under the circumstances for a party to the case to speak, call witnesses, or present evidence, and if that party has failed to call a material witness or offer material evidence, within his power to produce, as to any particular fact, you may infer that the witness, if called, or the evidence, if produced, would have been unfavorable to that party with respect to such fact."

and instead, gave the following instructions:

"In this case the defendants called no witnesses. All that means is that you base your conclusions on the testimony that you heard. . . ."

\* \* \*

". . . Any defendant has a perfect right to conclude it isn't necessary to call his own witnesses after the plaintiff has called witnesses to testify. . . .

> "So that all it means here is that you base your conclusions on the testimony you have heard. It doesn't make any difference whether they were called by the plaintiff or defendant. In this case, none were called by the defendants."

to which Appellants excepted.

The Appellants were attempting to invoke the missing witness rule, *Radin v. Supervisor of Assessments*, 254 Md. 294, 301, 255 A. 2d 413, 416 (1969), to which we think they were not entitled, since the Appellees used cross-examination to establish their case and under these circumstances, the presumption of the missing witness rule could only have misled the jury, *Critzer v. Shegogue, supra,* 236 Md. at 419-23, 204 A. 2d at 184-86.

For the reasons stated, we shall affirm the judgment entered below.

The result which we reach makes it unnecessary for us to consider the Appellees' cross appeal, resting on the contention that the trial court erred when it denied the motion of the Appellees for a directed verdict, based on the theory that there was insufficient evidence of the Appellees' negligence to go to the jury.

> *Judgment affirmed; costs to be paid by appellants.*

*Eldridge, J., dissenting:*

Because I believe that the trial court erred in instructing the jury on the issue of contributory negligence, I would reverse the judgment and remand this case for a new trial.

In my opinion there was no evidence in this case that Keith Lunsford was contributorily negligent. Therefore, the court's instruction on the issue of contributory negligence should not have been given.

The majority seems to suggest that Keith's leaving school early, and taking the route which he did, was evidence of negligence. However, the evidence shows that the path which Keith took the day he was attacked was the

same route that he customarily took home. Keith testified that he was never warned by school authorities not to take this route and was never disciplined for using it. Mr. Hudson, the principal, was aware that students regularly used this route to go home. He also knew that some students who purchased tickets to go to student ball games did not attend the game but rather left school early, using the path on which Keith was attacked. Although he did not approve of the students' using the path, he did not take any steps to prevent its use, even on days when a ball game was scheduled. None of this evidence was contradicted. Thus, the use of the path, at the time Keith was going home, was acquiesced in by school authorities.

As further evidence of contributory negligence, the majority recites the fact that Keith attempted to leave school early several times on the day he was attacked. In my view, the fact that Keith tried to leave school early on prior occasions that day can have no conceivable bearing on whether he acted reasonably in pursuing his normal route home at a time when school authorities had reason to believe that students would be using the path.

The other facts relied on by the majority are that Keith had heard rumors of impending violence at the school and that Keith continued to walk in the direction of the group of black students, who later were to attack him, after first noticing their presence. However, the evidence reveals that no threats or gestures were made by the group which would have alerted Keith to any danger until the time that he was actually accosted. I do not suggest that, even if there had been evidence of threats or gestures, Keith's actions could have been considered negligent, as one has every right to use a normally travelled route over public property. Certainly, however, in the absence of such threats or gestures, it cannot be said that Keith acted unreasonably.

The majority's position in this case thus amounts to a holding that a jury may find that, when there have been rumors of impending fights at the school, it is negligent for a

student of one race to approach a group of students of another race on a regularly used walkway on school grounds. With this I simply cannot agree.

Because I believe that the trial court erred in instructing the jury on the issue of contributory negligence and that, therefore, the case should be remanded for a new trial, it is not necessary to discuss the other issues raised by the appellants.

Judge Digges has authorized me to state that he concurs with the views expressed herein.