**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2537**

JOHN DOE, Individually and as parent and next friend of
J.D., a minor child; JANE DOE, Individually and as parent
and next friend of J.D., a minor child,

Plaintiffs – Appellants,

v.

THE BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY; KATHLEEN
SCHWAB,

Defendants – Appellees.

------------------------------

COUNCIL OF PARENT ATTORNEYS AND ADVOCATES,

Amicus Supporting Appellants,

NATIONAL SCHOOL BOARDS ASSOCIATION; MARYLAND ASSOCIATION OF
BOARDS OF EDUCATION,

Amici Supporting Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Alexander Williams, Jr., District
Judge. (8:11-cv-03229-AW)

Argued: December 10, 2014                    Decided: April 7, 2015

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Laura Ginsberg Abelson, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellants. Abbey G. Hairston, THATCHER LAW FIRM, LLC, Greenbelt, Maryland, for Appellees. **ON BRIEF:** Sharon Krevor-Weisbaum, Andrew D. Freeman, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellants. Shana R. Ginsburg, THATCHER LAW FIRM, LLC, Greenbelt, Maryland, for Appellees. Selene A. Almazan-Altobelli, Director, Advocacy Services, MARYLAND COALITION FOR INCLUSIVE EDUCATION, Hanover, Maryland; Mark B. Martin, LAW OFFICES OF MARK B. MARTIN, P.A., Baltimore, Maryland, for Amicus Council of Parent Attorneys and Advocates. Francisco M. Negrón, Jr., General Counsel, NATIONAL SCHOOL BOARDS ASSOCIATION, Alexandria, Virginia, for Amici National School Boards Association and Maryland Association of Boards of Education.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In November 2011, plaintiffs John and Jane Doe, individually and on behalf of their minor son J.D., filed suit in the District of Maryland against the Board of Education of Prince George's County and J.D.'s former school principal, Kathleen Schwab. The three-count complaint alleged, inter alia, that the defendants had failed to protect J.D. from sexual harassment by M.O., one of J.D.'s classmates.[1] In November 2013, the district court awarded summary judgment to the Board on the complaint's sex discrimination claim — pursued under Title IX of the Education Amendments of 1972 — and also granted summary judgment to the Board and Schwab on state law claims of negligence and gross negligence. See Doe v. Bd. of Educ. of Prince George's Cnty., 982 F. Supp. 2d 641 (D. Md. 2013). As explained below, we affirm the judgment.

I.

A.

In 2008, the Does enrolled J.D. in the fourth grade of a public Montessori school in Prince George's County (the

---

[1] A substantial part of the record in this case is sealed to protect the confidentiality of students and employees of the school where the sexual harassment occurred. We do not use the real names of J.D., his parents, or M.O.

"school").[2]  Suzanne Johnson was then the school's principal, and Schwab served as vice principal.  J.D., who was approximately nine years old, was assigned to the classroom of teacher Lisa Jellison.  Also in Jellison's fourth- through sixth-grade classroom was fifth-grader M.O., who was older and physically larger than J.D.

1.

During the fall of 2008, J.D. was subjected to bullying and teasing by M.O. and other students.  For example, students initiated "Don't Talk to [J.D.] Day" and labeled him a "snitch." At least once that fall, M.O. called J.D. "gay."  J.D. also reported to then-Vice Principal Schwab that "someone had said something to him in the bathroom that was of a sexual nature." See J.A. 645.[3]  J.D. did not report that incident to Schwab until several days after it occurred.  In response, Schwab told J.D. that he was entitled to respect and kindness and urged him to

---

[2] Because the Does, as plaintiffs, were the nonmoving parties in the summary judgment proceedings, we recite the facts in the light most favorable to them.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[3] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

immediately report any further such incidents. She also spoke to Jane Doe about that discussion.[4]

In early December 2008, M.O. exposed his genitals to J.D. in the classroom library (the "library incident"). J.D. did not report that event to Schwab until more than a month later, in January 2009. As a result of the library incident, Jane Doe phoned the school and the Board's superintendent to discuss the Does' concerns regarding the harassment of their son. Neither Principal Johnson nor the superintendent was available at that time, and the superintendent did not promptly return the phone call. Jane Doe spoke with Johnson later that day, however, and Johnson thereafter contacted M.O.'s parents. Schwab, who has acknowledged that an episode such as the library incident "could be serious and disturbing," also interviewed J.D. regarding his allegations about M.O. See J.A. 664. Following that interview, Schwab instructed Jellison to rearrange her classroom so that

---

[4] The Does assert in their appellate briefs that it was M.O. who said something to J.D. in the bathroom that was of a sexual nature, and that M.O. on other occasions called J.D. by names including "pussy" and "bitch." According to the Does, the district court erred by failing to consider such conduct in its summary judgment analysis. That it was M.O. who made the sexual remark in the bathroom, however, is not supported by the summary judgment record. Additionally, the name-calling is evidenced only by notations in the Does' expert report. In any event, even if we accepted as true that M.O. engaged in the foregoing conduct, it would not alter our disposition of this appeal.

J.D. and M.O. were seated as far from each other as possible and so that Jellison could readily see both students.

In February 2009, J.D. reported to Schwab that M.O. "accosted" him in the hallway. See J.A. 371. Schwab relayed that information to Johnson, but there is no indication that further action was taken. In March 2009, there were two reports of M.O. sexually harassing J.D. First, by an after-school phone call, John Doe advised Jellison that M.O. "keeps making sexual remarks and gestures" to J.D. See id. at 577. That same week in March, while Jellison's back was turned from M.O. and J.D. during a classroom dancing activity, M.O. grabbed J.D.'s body and made humping gestures toward him (the "classroom incident"). Jellison did not witness the classroom incident, and it was not immediately reported to her. After receiving notice of the classroom incident, however, Jellison interviewed three female students who confirmed they had seen it. All three advised Jellison that M.O. had also made sexual remarks to them. In response, Jellison issued a Pupil Discipline Referral to M.O. for "disrespect" and "sexual harassment," and spoke to Schwab about the issues. See id. at 383.[5] Jellison sent the three student witnesses, along with J.D. and M.O., to Schwab's office.

---

[5] A Pupil Discipline Referral is a disciplinary form utilized by teachers to document improper conduct and refer an offending student to an administrator for appropriate action.

M.O. then received a five-day in-school suspension for improper behavior, which he served in Johnson's office.

There were no additional reports of M.O. harassing J.D. during the 2008-09 school year. Nevertheless, Schwab consulted J.D. several times about whether he was "doing okay." See J.A. 338. According to J.D., he would tell Schwab he "was having a good day" even if it was untrue. Id.

In April 2009, Johnson took leave from her principal position at the school and soon passed away. Schwab was then named the school's principal.

2.

At the beginning of the 2009-10 school year, J.D. and M.O. were again assigned to Jellison's classroom, which surprised Jellison "because of problems that were happening" during the 2008-09 school year. See J.A. 586. During the fall of 2009 — when J.D. was in fifth grade and M.O. in the sixth — Jellison and Principal Schwab were thrice advised that M.O. had harassed J.D. First, in November 2009, J.D. reported that M.O. "had made a harassing remark to [him] at the water fountain during dismissal the previous afternoon." Id. at 324. In response, Schwab reviewed the pertinent video surveillance footage of the hallway and water fountain area at the school, which "showed that [J.D.] never left the classroom during 45 minutes before and during dismissal on the previous day." Id. Nonetheless,

7

Schwab met with both J.D. and M.O. and talked to them about the importance of mutual respect. In a second report to Schwab that month, J.D. explained that M.O. said something that made J.D. "uncomfortable," but he did not further elaborate. Id. at 674. Schwab talked to M.O., but M.O. denied knowing what made J.D. uncomfortable. Schwab then warned M.O. that further complaints would be grounds for suspension.

The final report to the school of M.O.'s harassment of J.D. occurred on December 4, 2009. J.D. was in a school bathroom when M.O. arrived and tried to climb into J.D.'s bathroom stall (the "bathroom incident"). M.O. was partially nude during the bathroom incident, with his pants down around his ankles. After school that day, J.D. informed his parents of that incident, and the Does reported it to the school three days later, on December 7, 2009. At a school administrator's request, J.D. then wrote a statement documenting his account of the bathroom incident. In response to J.D.'s allegation, Schwab interviewed three other male students who had been in the bathroom at the pertinent time, but each denied that the bathroom incident had occurred. A school security officer and J.D.'s father also reviewed the December 4, 2009 video surveillance footage of the bathroom's entrance, but the video failed to corroborate the bathroom incident. Even so, the school established procedures to ensure that J.D. would avoid M.O. in the bathroom. One of those

8

procedures — having all students use sign-in/sign-out sheets when going to the bathroom — quickly proved unworkable and was abandoned within a week of its implementation. Another procedure — providing J.D. with a student escort to the bathroom — was soon rejected by J.D. because other students "made horrible jokes" about his use of the escort. See J.A. 550. Thereafter, J.D. avoided the school bathroom and sought attention from the school's nurse for his resultant stomach pains. J.D. did not advise the nurse that he was afraid to go to the bathroom, but instead told her that the bathroom "wasn't clean." See id. at 524. The nurse then offered J.D. the use of her bathroom.

B.

The defendants were not notified of other incidents involving J.D. and M.O. In the spring of 2009, the Does discovered that the boys had been texting each other. One text from J.D. to M.O. stated, "Can u keep a secret[?]" See J.A. 365. Another text from J.D. to M.O. read, "Keep dis a secrt ok[?]" Id. at 366. After discovering the text communications between M.O. and J.D., Jane Doe promptly confiscated J.D.'s cell phone, deleted M.O.'s phone number from J.D.'s contact list, and returned the phone to her son. Jane Doe continued to monitor J.D.'s cell phone, however, and, in June 2010, discovered that M.O. had sent explicit photos to J.D. depicting homosexual sex.

J.D. did not see the photos, and the Does did not report the text messages to the school.

In the summer of 2010, the Does contacted the Prince George's County Police Department to report that J.D. had been sexually assaulted by M.O. On July 1, 2010, J.D. provided a written statement to a county detective that, during the 2008-09 school year, M.O. forced him to engage in sexual activity in the school's library. J.D. further asserted that, during the 2009-10 school year, M.O. twice forced sexual acts on him in the school's bathroom. Prior to the summer of 2010, however, J.D. had not informed either his parents or the school that M.O. had sexually assaulted him.

On July 30, 2010, the county police detective interviewed M.O. regarding J.D.'s sexual assault allegations. M.O. said that he and J.D. had engaged in consensual sexual encounters on three occasions in the school's library and bathroom. The detective re-interviewed J.D. that same day and challenged J.D. on inconsistencies between his and M.O.'s versions of the events. According to the detective, J.D. then admitted that he and M.O. had engaged in consensual sexual acts. The police investigation was thereafter closed, in that "no elements of a sexual assault [had] been articulated." See J.A. 332. In August 2010, the Does withdrew J.D. from the school. J.D. now maintains that he altered his story to the police because he was

10

"nervous" and thought the detective would believe M.O.'s story over his own. See id. at 535. J.D. also "thought that [changing my story] would just be the end of it." Id. at 535-36.[6]

C.

In 2000, several years prior to the foregoing events, the Board promulgated its Administrative Procedure No. 4170 ("AP 4170"), which created "grievance procedures for student and employee complaints of all forms of discrimination, harassment, bias, or extremism." See J.A. 112. Pursuant to AP 4170, students are encouraged to promptly report student-on-student sexual harassment. Upon receiving such a report, a principal is to complete an incident report form (an "AP 4170 form"), contact the relevant students' parents by phone and letter, and submit the AP 4170 form and a copy of the letter to the director of the Board's Equity Assurance Office.[7] AP 4170 "recommend[s] that all

---

[6] The Does allege that J.D. suffered damages from M.O.'s harassment, including a recurrence of encopresis (fecal staining), which had been in remission for two years; post-traumatic stress disorder; and an adjustment disorder with mixed anxiety and depressed mood.

[7] The AP 4170 form seeks details with respect to alleged harassment, including: (1) the name of the complainant; (2) the name of the target of the harassment; (3) the location of the harassment; (4) a description of the harassment; and (5) the school official's response to the harassment. The form also inquires about witnesses and any previous incidents of harassment.

persons reporting a complaint of . . . harassment use [its] reporting procedures," but provides that "any individual has the right to bypass [its] procedures by reporting directly to the appropriate supervisor or designee." Id. at 115-16. Neither the school nor the Does completed or submitted any AP 4170 forms regarding M.O.'s harassment of J.D.

## II.

In November 2011, the Does filed their three-count complaint against the defendants in the District of Maryland, seeking compensatory and punitive damages. Count Three named the Board only, alleging under Title IX that the Board had discriminated against J.D. on the basis of sex. The complaint also alleged in Counts One and Two that the Board and Principal Schwab were liable for negligence and gross negligence. After discovery was completed, the defendants moved for and secured summary judgment on all three claims.

By its decision of November 18, 2013, the district court first awarded summary judgment to the Board on the Title IX claim. The court observed that a Title IX claim requires proof of four elements: (1) that a student was enrolled at an educational institution receiving federal funds; (2) that the student was subjected to harassment based on sex; (3) that the harassment was sufficiently severe or pervasive to create a

12

hostile environment in an educational program or activity; and (4) that there is a basis for imputing the harasser's liability to the institution. See Doe, 982 F. Supp. 2d at 651 (citing Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007)). There has been no dispute as to proof of the first prong of the Title IX analysis, and the court determined that "a reasonable juror could infer that the harassment stemmed from sexual desire," satisfying the second prong. Id. Further, with respect to the third prong, the court explained that it was "unprepared to conclude" that M.O.'s harassment of J.D. had not deprived J.D. of an educational program or activity, in that the harassment had compelled the Does to withdraw J.D. from the school. Id. at 653.

According to the district court, however, the Title IX claim failed to survive summary judgment because the Does could not satisfy the fourth prong of the analysis by establishing a basis for imputing liability to the Board. See Doe, 982 F. Supp. 2d at 653. In that regard, the court recognized that the Board must have had actual knowledge of the student-on-student harassment and then acted with deliberate indifference to such harassment. Id. at 653-54 (observing that "[a] funding recipient is deliberately indifferent to known acts of sexual harassment 'only where the recipient's response . . . is clearly unreasonable'" (alteration in original) (quoting Davis ex rel.

13

LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648 (1999))).

After consulting the summary judgment record, the district court concluded that the defendants were not shown to be deliberately indifferent. See Doe, 982 F. Supp. 2d at 654-56.[8] In support of that ruling, the court primarily focused on the defendants' responses to the library, classroom, and bathroom incidents. Because of the library incident, the court related, Schwab had Jellison rearrange her classroom so that J.D. and M.O. were seated as far apart as possible and Jellison had better visibility of both students. Id. at 654. Thereafter, as a result of the classroom incident, M.O. served a five-day in-school suspension. Id. Finally, notwithstanding that a thorough investigation failed to corroborate the bathroom incident, the school implemented procedures to protect J.D. when he used the bathroom, including providing him with a student

---

[8] Although the district court did not consistently distinguish between the Board and Schwab in assessing the Title IX claim, that claim was properly pursued against the Board only. See Hartley v. Parnell, 193 F.3d 1263, 1270 (11th Cir. 1999) ("Individual school officials . . . may not be held liable under Title IX."). In any event, liability may be imputed to an educational entity (such as the Board) premised on the actual knowledge of a school official (like Schwab) who has "authority to address the alleged discrimination and to institute corrective measures on the [educational entity's] behalf." See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998).

14

escort. Id. at 654-55. The court observed, for example, that if the defendants' response to the classroom incident was clearly unreasonable, "then 'nothing short of expulsion of every student accused of misconduct involving sexual overtones would protect school systems from liability or damages.'" Id. at 654 (quoting Davis, 526 U.S. at 648). As the court then explained, such an "outcome would deprive school administrators of the flexibility to employ tailored responses to sexual harassment and run counter to the strong national policy in favor of educating children." Id.[9]

Turning to J.D.'s July 2010 complaint to the county police that he had been sexually assaulted by M.O., the district court observed that the defendants "could not have acted in a clearly unreasonable manner as to [those] allegations." Doe, 982 F.

---

[9] In addition to the library, classroom, and bathroom incidents, the district court considered inappropriate remarks made to J.D., including M.O.'s "gay" comment. The court recognized, inter alia, that such remarks are "just an example of the 'dizzying array of immature behaviors by students,'" and that, "[t]o the extent a response was in order, the remedial measures [taken by the defendants], including Schwab's instructing [J.D.] to tell his teacher of any further such incidents, sufficed." Doe, 982 F. Supp. 2d at 655-56 (quoting Davis, 526 U.S. at 651). Addressing the Does' theory that J.D. and M.O. should have been placed in separate classrooms for the 2009-10 school year, the court emphasized not only its obligation to refrain from "micromanag[ing]" the school's operations, but also the lack of evidence that such a response would have impeded M.O.'s harassment of J.D., much of which occurred outside the classroom. Id. at 656-57.

Supp. 2d at 655.  Put succinctly, the defendants were never advised of the sexual assault allegations, and could not respond because they "lacked actual notice of [them]."  Id.  The court further rejected any notion that the defendants' "failure to follow the procedures set forth in AP 4170 displays deliberate indifference," as "the Supreme Court has held that the failure to follow sexual harassment grievance procedures does not prove deliberate indifference under Title IX."  Id. at 657 (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291-92 (1998)).

The district court also awarded summary judgment to the Board and Schwab on the Does' negligence and gross negligence claims.  In disposing of the gross negligence claim, the court recognized that, under Maryland law, a defendant acts with the requisite "wanton and reckless disregard for others only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."  Doe, 982 F. Supp. 2d at 658 (internal quotation marks omitted).  The court then ruled that a reasonable jury could not conclude that the defendants "intentionally inflicted [J.D.'s] injury or acted as if [J.D.'s] rights did not exist."  Id.

Regarding the negligence claim, the district court observed that Maryland requires proof of four elements:  (1) a duty owed to the plaintiff; (2) a breach of that duty; (3) a legally

16

cognizable causal relationship between the breach of duty and the harm suffered; and (4) damages. See Doe, 982 F. Supp. 2d at 659. The court concluded that the defendants owed J.D. "a duty to exercise reasonable care to protect him from student-on-student sexual harassment." Id. (citing Lunsford v. Bd. of Educ. of Prince George's Cnty., 374 A.2d 1162, 1168 (Md. 1977)). Additionally, the court allowed that "a reasonable juror could conclude that [J.D.] suffered injuries on account of the alleged harassment." Id.

The district court explained at length, however, that the defendants had not, as a matter of law, breached their duty to J.D. See Doe, 982 F. Supp. 2d at 659-61. More specifically, as the court stated, the defendants' responses to the library and classroom incidents were "swift and substantial," and the defendants took "significant steps" to address the bathroom incident. See id. at 659. According to the court, "it is unclear what else . . . could have [been] done, or that any more measures would not have proved overly burdensome." Id. Although it acknowledged that a failure to adhere to administrative procedures might be probative of negligence, the court determined that the other circumstances of this case weighed heavily against the conclusion that the defendants breached the duty owed J.D. Id. at 660 (citing Volkswagen of Am., Inc. v. Young, 321 A.2d 737, 746 (Md. 1974), for the

17

proposition that "statutory or regulatory requirements are deemed to furnish standards by which courts or juries determine, along with other circumstances, whether or not conduct is negligent").[10]

As an alternative to rejecting the negligence claim for lack of a breach of duty, the district court ruled that such a breach by the defendants was not the cause of J.D.'s injuries, see Doe, 982 F. Supp. 2d at 661-63, and that the Does were barred from recovering on a negligence theory because J.D. was contributorily negligent and assumed the risk, id. at 663-64. The Does timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

III.

We review de novo a district court's award of summary judgment. See Laber v. Harvey, 438 F.3d 404, 415 (4th Cir.

---

[10] In the course of analyzing the negligence claim, the district court ruled that the report of the Does' proposed expert, Susan Strauss, failed to create a triable issue of breach of duty. First, the expert report was unsworn and not signed under penalty of perjury. See Doe, 982 F. Supp. 2d at 660. Second, the evidence either failed to support or contradicted "many of the factual contentions on which Strauss bases her conclusions." Id. at 660-61. And third, Strauss's core conclusion — that the defendants failed to adhere to applicable administrative procedures — was premised on inapplicable rules and procedures, and "overstates [the defendants'] failure to follow AP 4170." Id. at 661.

18

2006) (en banc). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

IV.

On appeal, the Does maintain that the district court erroneously determined, with respect to their Title IX claim, that liability for the sexual harassment of J.D. cannot be imputed to the Board. The Does also assert that the court erred in concluding, on their negligence claim, that they failed to establish the defendants' breach of duty. We address — and reject — those contentions in turn.[11]

A.

Under Title IX, an imputation of liability to an educational institution has two pertinent aspects: (1) whether the institution had actual knowledge of the student-on-student sexual harassment; and (2) whether the institution was deliberately indifferent to that harassment. See Davis ex rel.

_____

[11] Because we agree with the district court that the Does failed to prove a breach of duty, we need not reach their additional contention that the district court erred in ruling that J.D. was contributorily negligent and assumed the risk. Meanwhile, we do not review the court's summary judgment award on the Does' gross negligence claim, as they do not contest that ruling.

19

_LaShonda D. v. Monroe Cnty. Bd. of Educ._, 526 U.S. 629, 646-47 (1999). An educational institution can be liable on a deliberate indifference theory only when its response to known harassment is "clearly unreasonable." _Id._ at 648. To avoid liability, the institution is not required "to remedy peer harassment" or "to ensure that students conform their conduct to certain rules." _Id._ at 648-49 (alteration and internal quotation marks omitted). On summary judgment, a court is entitled to decide that the educational entity's response was "not 'clearly unreasonable' as a matter of law." _Id._ at 649.

Applying the deliberate indifference standard recognized by the Supreme Court in its _Davis_ decision, the district court concluded here, as a matter of law, that the Board's responses to M.O.'s harassment of J.D. were not clearly unreasonable. In challenging that ruling in this appeal, the Does fault the Board for failing both to discern an escalating pattern of harassment and to take effective corrective actions. That is, the Does argue that the district court erred in accepting the Board's "argument that each instance of sexual harassment was an isolated incident rather than part of an escalating pattern." _See_ Br. of Appellants 47. The Does also invoke a Sixth Circuit decision and guidance from the Department of Education's Office for Civil Rights for the proposition "that a response is 'clearly unreasonable' when it is not calculated to be

20

effective, or when repeated harassment demonstrates that it has not been effective." Id. at 47-48 (citing Vance v. Spencer Cnty. Pub. Sch. Dist., 231 F.3d 253 (6th Cir. 2000); Office for Civil Rights, Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034 (Mar. 13, 1997) (the "OCR Guidelines")).

The Does urge us to speculate what the Board might have known had school employees more thoroughly investigated J.D.'s allegations, and they would have us hold the Board liable under Title IX for failing to discover "the full extent of the pattern of sexual harassment." See Br. of Appellants 49. We cannot accept the Does' theory, however, because we would have to substitute a negligence standard for the deliberate indifference standard. See Doe v. Galster, 768 F.3d 611, 619-20 (7th Cir. 2014) (rejecting the plaintiff's argument that, based on a pattern of non-severe harassment, "the school should have done more to investigate and to prevent the violent acts that were committed [later]").

We also cannot accord the Does relief from the district court's summary judgment award under the Sixth Circuit's Vance decision and the OCR Guidelines. In describing how a school should respond to known sexual harassment, the OCR Guidelines recommend that the school "take steps reasonably calculated to end any harassment, eliminate a hostile environment if one has

21

been created, and prevent harassment from occurring again." See OCR Guidelines, 62 Fed. Reg. at 12042. Relying on the OCR Guidelines, the Vance court determined that, "where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior." See 231 F.3d at 261. Adopting the rationale of Vance and the OCR Guidelines would not help the Does, however, because this is not a case where the Board had "actual knowledge that its efforts to remediate [were] ineffective, and it continue[d] to use those same methods to no avail." See id. (emphasis added).

In a final attempt to revive their Title IX claim, the Does have reiterated their argument that the Board's failure to adhere to its sexual harassment policies, including AP 4170, is evidence of deliberate indifference. The district court properly rejected that contention, however, on the ground that "the failure to follow sexual harassment grievance procedures does not prove deliberate indifference under Title IX." Doe, 982 F. Supp. 2d at 657 (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291-92 (1998)); see also Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist., 647 F.3d 156, 169 (5th Cir. 2011) (explaining that, under Gebser, principal's failure to contact school district's Title IX coordinator

22

pursuant to school policy "does not mean [principal's] actions were clearly unreasonable").

In sum, we agree with the district court that the Board's failure to strictly adhere to its sexual harassment policies, including AP 4170, is not determinative. Indeed, such "procedural shortcomings do not diminish the substantive impact of all the steps [the defendants] took in response to" J.D.'s allegations. See Doe, 982 F. Supp. 2d at 657. Those steps, as fully explained by the district court's decision, were not clearly unreasonable. See id. at 654-58. Thus, we affirm the district court's award of summary judgment on the Does' Title IX claim.

B.

Turning to the negligence theory, it must be shown that there was a breach of the duty under Lunsford v. Board of Education of Prince George's County, 374 A.2d 1162, 1168 (Md. 1977), "to exercise reasonable care to protect a pupil from harm." The Does maintain that the defendants breached their duty to J.D. by failing to recognize an escalating pattern of harassment and conduct a reasonable investigation, by failing to follow the Board's sexual harassment policies, and by failing to respond appropriately to known instances of harassment.

We reject the Does' contention that had the defendants' viewed M.O.'s behavior as forming a pattern of harassment, they

23

would have conducted a "proper investigation," and "would likely have uncovered the repeated sexual assaults" of J.D., which the defendants "then would have taken further steps to prevent." See Br. of Appellants 29. That argument is speculative, and cannot form a basis for denying summary judgment. See Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) ("The nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." (internal quotation marks omitted)). Moreover, although the Does assert otherwise, the decision of the Court of Appeals of Maryland in Eisel v. Board of Education of Montgomery County did not establish a school's duty to investigate, such that a breach of that duty would sound in negligence. See 597 A.2d 447, 456 (Md. 1991) (ruling that "school counselors have a duty to use reasonable means to attempt to prevent a [student's] suicide when they are on notice of [the] student's suicidal intent").

We also disagree with the Does' theory that the defendants breached their duty to J.D. by failing to follow the Board's sexual harassment policies, including AP 4170. Indeed, the summary judgment record demonstrates that many of the defendants' responses tracked AP 4170's recommendations or otherwise constituted a reasonable investigation of J.D.'s allegations. For example, following the bathroom incident, the

24

defendants adhered to the recommendations in the AP 4170 form by obtaining, in a documented statement written by J.D., the names of the parties involved, the location of the incident, and a description of the incident. In further investigation of the bathroom incident, the school's security officer reviewed video footage of the bathroom's entrance, and Schwab interviewed potential witnesses in compliance with AP 4170. Similarly, Jellison interviewed three students who had witnessed the classroom incident. In procuring statements from those students, Jellison discovered that M.O. had also displayed inappropriate behavior toward them. Thus, in compliance with AP 4170, Jellison located witnesses to the classroom incident, uncovered previous incidents of M.O.'s harassment, and identified three students who had "experienced the same problem" with M.O. See J.A. 128. Furthermore, in response to the library incident, Principal Johnson spoke to both J.D.'s parents and M.O.'s parents, and Schwab took a statement directly from J.D. regarding the nature of the harassment, in compliance with AP 4170. Accordingly, there is no triable issue that the defendants breached their duty on that ground.[12]

---

[12] We acknowledge that the Does' expert report by Susan Strauss purported to establish a genuine dispute as to breach of duty. See supra note 10. The district court discounted the report on several grounds, however, including that it was premised on inapplicable rules and procedures, and "overstates
(Continued)

Finally, there can be no genuine dispute that, each time J.D. made a complaint about M.O., the defendants exercised reasonable care to protect J.D. from harm. For example, following the library incident, which occurred in Jellison's classroom, Schwab instructed Jellison to rearrange her classroom so that J.D. and M.O. sat as far apart as possible. Next, after the classroom incident, M.O. was removed from Jellison's classroom for five days to serve an in-school suspension in Principal Johnson's office. And, although Schwab had reason to doubt the validity of the bathroom incident, she took steps to ensure that J.D. and M.O. would not be alone together in the bathroom, including the offer of a student escort for J.D.

In these circumstances, we are constrained to agree with the thoughtful decision of the district court that the defendants' responses to the known incidents of harassment were "swift," "substantial," and "significant." See Doe, 982 F. Supp. 2d at 659. Accordingly, we likewise conclude that there has been no showing that the defendants breached their duty to

---

[the defendants'] failure to follow AP 4170." See Doe, 982 F. Supp. 2d at 661. We agree with the district court and thus do not consider Strauss's report.

26

J.D., and we affirm the court's summary judgment award on the Does' negligence claim.

V.

Pursuant to the foregoing, we affirm the judgment of the district court.

<u>AFFIRMED</u>

27